State of Missouri v. Scott.

---

STATE OF MISSOURI, Defendant in Error, v. SAMUEL W. SCOTT, Plaintiff in Error.

1. *Crimes and punishments — Passing forged checks — Evidence — Handwriting — Comparison.*— In an action for passing a counterfeit or forged bank check, where the signature and indorsement were positively proved and no other papers were introduced in evidence for the purpose of admitting testimony by comparison, it was competent to submit the whole paper to the jury, with or without the aid of experts, for them to form their own conclusion as to whether the whole instrument thereon was produced by one and the same hand.

2. *Practice, criminal — Trial — Re-trial at same term where no verdict.*— A prisoner may be again put on trial at the same term where the first trial has not resulted in a verdict.

*Error to First District Court.*

*Budd*, for plaintiff in error.

A witness can not testify to the handwriting of a party from mere comparison with other writing proved to be genuine. (2 Phillips on Ev. 609–615, and notes; 4 Blackst. 358; The People v. Spooner, 1 Denio, 343; Jackson v. Phillips, 9 Cow. 112; Wilson v. Kirkland, 5 Hill, 182; Clark v. Wyatt, 15 Ind. 271; Jumpertz v. People, 21 Ill. 375; Bishop v. State, 30 Ala. 34; McNair v. Commonwealth, 26 Penn. St. 388; Outlaw v. Hurdle, 1 Jones, Laws N. C., 150; Hawkins v. Grimes, 13 B. Monr. 258, 267; Kinney v. Flynn, 2 R. I. 319; Smith v. Walton, 8 Gill, 77; McAllister v. McAllister, 7 B. Monr. 269; Pope v. Askew, 1 Ired. 16; Page v. Homans, 2 Shep. 478; Bank of Pennsylvania v. Holdeman, 1 Penn. 161; Hawkins v. Stuyvesant, Anthon, 97; State v. Givens, 5 Ala. 747; Bell v. Harper, Holt, 421.)

*H. B. Johnson*, attorney-general, for defendant in error.

The handwriting of two documents, or different portions of the same document, when they are already in evidence for other purposes, may be compared by the jury, with the aid of experts, for the purpose of showing that they were both written by the same person. (Doe v. Suckermore, 4 A. & E. 703; Hammond's case, 2 Greene, 33; Smith v. Sainsbury, 5 C. & P. 195; Cater's case, 4 Esp. 177; Griffiths v. Williams, 1 C. &. J. 47; Solita v. Yarrow, 1 Mood. & R. 133; Doe v. Newton, 5 Ad. & El. 514; Bromage v. Rice, 7 C. &. P. 548; Commonwealth v. Carey, 2 Pick. 47; Moodey v. Rowell, 17 Pick. 490; Hicks v. Person, 19 Ohio, 426; Richardson v. Newcomb, 21 Pick. 315; Lyon v. Lyman, 9 Conn. 55; Goodtitle v. Braham, 4 Tenn. 497; Waddington v. Cousins, 7 C. & P. 595; Van Wick v. McIntosh, 14 N. Y. 439; 1 Greenl. Ev., 12th ed., §§ 578–581; Depue v. Place, 7 Barr. 428; Rogers v. Shaler, Anthon, 109; Brooks v. Tichborne, 2 Eng. L. & Eq. 374.)

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted and convicted in the Jackson County Circuit Court for passing a counterfeit and forged bank check. The main question here is the action of the court in admitting testimony on the part of the State. The check purported to be drawn on the Lexington (Ky.) National Bank, and was signed with the name of Geo. B. Lucas, as maker, and the name of the defendant was inserted in the body as payee. The defendant indorsed and delivered the check to one Sheridan, who saw him write the indorsement, and he afterward acknowledged that he wrote the check himself, and that Lucas was a myth, there being no such person in existence. On the trial, the State introduced two witnesses, who were bankers and who were permitted to state that in their opinion the indorsement and the check were in the same handwriting. This was objected to by defendant, and the objection overruled. The paper was then submitted to the jury for their examination. All evidence of handwriting, except where the witness saw the document written, is in its nature comparison, and founded upon opinion. It is the belief which the witness entertains, upon comparing the writing in question with its exemplar in his mind, derived from some previous knowledge. It is agreed that if the witness has the proper knowledge of the party's handwriting, he may declare his belief in regard to the genuineness of the writing in question. The point upon which courts have differed in opinion is upon the source from which this knowlege is derived, rather than as to the degree or extent of it. (1 Greenl. Ev. § 576.)

The modes of acquiring this knowledge, so as to permit the witness to testify as to the genuineness of the handwriting, are: first, by having seen the person write; and it is held sufficient for this purpose that the witness has seen him write but once, and then only his name. The proof in such case would be very light, but it would be proper for the jury to weigh it. The other mode is, from having seen letters, bills, or other documents, purporting to be the handwriting of the party, and having afterward personally communicated with him respecting them.

In Reyburn v. Bellotti, 10 Mo. 597, it was held that a witness may acquire such knowledge of a person's handwriting as to authorize him to testify to his signature by having seen his letters on business with a firm of which witness was clerk, and finding that he acted upon and recognized the letters.

But Greenleaf says the rule as above stated has been relaxed in two cases: first, where writings are of such antiquity that living witnesses can not be had, and yet are not so old as to prove themselves. Here the course is to produce other documents, either admitted to be genuine or proved to have been respected and treated and acted upon as such by all parties; and to call experts to compare them, and to testify their opinion concerning the genuineness of the instrument in question. Second, where other writings, admitted to be genuine, are already in the case. Here the comparison may be made by the jury, with or without the aid of experts. The reason assigned for this is, that as the jury are entitled to look at such writings for one purpose, it is better to permit them, under the advice and direction of the the court, to examine them for all purposes, than to embarrass them with impracticable distinctions to the peril of the cause. (1 Greenl. Ev. § 578.)

So Phillips, in commenting on the question, says : "Within a recent period a rule has been established which amounts to a considerable relaxation of the strictness of the law in regard to the the direct comparison of handwriting. Upon a question respecting the identity of handwriting, the jury may be allowed to take other papers which have been proved to be in the writing of the party whose handwriting is disputed (provided they are part of the proofs in the cause), and may compare them with the disputed writing, for the purpose of forming their opinion whether the disputed writing is genuine." (2 Phil. Ev., ed. 1859, p. 615.) This is now the recognized principle in England, and has been followed in many of the American cases. (Hicks v. Parson, 19 Ohio, 426 ; Bowman v. Sanborn, 5 Fost. 87 ; Henderson v. Hackney, 16 Ga. 521.)

In Vermont, genuine signatures are allowed to go to the jury for comparison. (Adams v. Field, 21 Verm. 256.) The strongest

20—VOL. XLV.

and best reason in support of the rule for rejecting evidence founded on comparison of handwritings in ordinary cases, is that the writings, intended as specimens to be compared with the disputed paper, would be brought together by a party to the suit, who is interested to select such writings only as may best subserve his purpose, and that they are not likely, therefore, to exhibit a fair specimen of the general character of handwriting. And it may be further said that this species of evidence might cause inconvenience by raising numerous collateral issues, and often come by surprise against the party to be affected by it.

But the case we are now considering seems to come within the exception or relaxation of the rule as stated by Greenleaf and Phillips. There was no collateral issue raised, nor any irrelevant or outside paper or writing introduced for the purpose of admitting testimony by comparison. The forged check was the exact paper in evidence, and, independently of the acknowledgment of the prisoner, the indorsement and signature were positively proved, and it was competent to submit the whole paper to the jury, with or without the aid of experts, for them to form their own conclusion as to whether the whole instrument, with the indorsement thereon, was produced by one and the same hand.

The defendant was tried twice at the same term. On the first trial the jury disagreed and were discharged. Another jury was empanneled, without objection ; he pleaded not guilty ; was regularly tried and convicted. I am not aware that any error was committed in this. I know of no law which prohibits the court from again putting the prisoner on trial at the same term, when the first trial has not resulted in a verdict. The record does not show that he suffered any injustice by the proceeding. He acquiesced in it at the time, and we see no reason to interfere on that account.

Judgment affirmed. The other judges concur.