KAUFFMAN v. RAEDER et al.

(Circuit Court of Appeals, Eighth Circuit. April 10, 1901.)

No. 1,473.

1. CONTRACT—CONSTRUCTION—PURPOSE AND INTENTION OF PARTIES MUST PREVAIL.

The situation of the parties when a contract is made, its subject-matter, and the purpose of its execution are always material to determine the intention of the parties and the meaning of the terms they used, and when these are ascertained they must prevail over the dry words of the agreement.

2. CONTRACT—ACCEPTANCE OF PARTIAL PERFORMANCE BARS RESCISSION.

Where one party to a contract has received and retained the benefits of a substantial partial performance thereof by the other party, he cannot rescind it, but the contract must stand, he must perform his part of it, and his remedy for the breach of complete performance by the other party is limited to compensation therefor in damages.

3. CONTRACT—ACTION MAINTAINABLE UPON PARTIAL, WITHOUT COMPLETE, PERFORMANCE.

A party to a contract, who has conferred upon the other party thereto the benefits of a substantial partial performance thereof, but who has not

completely performed the agreement, may maintain an action against the other party for specific performance, or for damages for the latter's failure to perform, upon plea and proof of his own partial performance, without plea or proof of his complete performance, and the defendant in such an action may recoup his damages for the plaintiff's failure of complete performance, or may recover them in an independent action therefor.

4. CONTRACT—DEPENDENT COVENANT—BREACH.

The breach of a dependent covenant, a covenant which goes to the whole consideration of a contract, gives to the injured party the right to rescind the contract, or to treat it as broken and to recover damages for a total breach.

5. CONTRACT—INDEPENDENT COVENANT—BREACH.

A breach of an independent covenant, of a covenant which does not go to the whole consideration of a contract, but which is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract, or warrant its rescission by the injured party. The latter is still bound to perform his part of the contract, and his only remedy for the breach is compensation in damages.

6. COMMERCIAL CONTRACTS—INTERPRETATION—PERFORMANCE.

Commercial contracts must be interpreted in the light of commercial usages, and their performance must be such as business men would naturally contemplate.

7. CONTRACT—OFFER OF DELIVERY OF PERSONAL PROPERTY—WHEN SUFFICIENT.

All that is ordinarily required of a party to a contract who has agreed to deliver personal property upon the payment of a debt or price is that he shall put the property in some convenient place, subject to the disposal of the payor upon his compliance with the terms of the contract, and that he shall notify the promisor of the fact.

8. SAME.

Nine parties agreed to pay $35,000 and interest to A. on or before a day certain, and A. agreed to assign and deliver certain stock in a corporation to them when they paid the money. A. deposited the stock in a bank in the city of St. Louis, where the contract was made, and more than 40 days before the day certain caused the obligors to be notified that the stock was in the bank, subject to their disposition, upon their payment of their debt. Some of the nine parties resided and conducted business in St. Louis; others, in Chicago. *Held*, this was a reasonable, fair, and sufficient offer of performance of his contract by A.

Thayer, Circuit Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This is an action on a contract. At the close of the evidence the court directed a verdict in favor of the defendants. The writ of error challenges the judgment which followed that verdict. The material facts established when the court directed the verdict were these: The plaintiff in error, John W. Kauffman, was in 1895 the owner of certain real estate in the city of St. Louis, Mo., at the northwest corner of Ninth and Olive streets. On June 19, 1895, he made a lease of this property to the Central Realty & Improvement Company, a corporation, for a rental of $35,000 per annum, payable quarterly on August 1st, November 1st, February 1st, and May 1st in each year. In July, 1895, the Century Building Company, a corporation, was organized for the purpose of taking an assignment of this lease and constructing a building on these premises. On July 19, 1895, the lease was assigned to the Century Building Company, and that corporation assumed the payment of the rents reserved therein to the plaintiff, Kauffman. After the lease of June 19, 1895, had been made, the defendants in error and their associates, for the purpose of relieving the Century Building Company of the payment of the rent on this lease for one year, and of securing the payment and satisfaction of the first $35,000 payable upon this lease, made the following contract with John W. Kauffman:

"This agreement, made and entered into in triplicate this 19th day of June, 1895, by and between John W. Kauffman, of the city of St. Louis, party of the first part, and Henry Raeder, Jonathan Clark, B. S. Crocker, and A. S. Coffin, of the city of Chicago, state of Illinois, and C. W. Wall, A. O. Rule, and R. F. Kilgen, of the city of St. Louis, state of Missouri, and the McCormick-Kilgen-Rule Real-Estate Company, a corporation organized under the laws of the state of Missouri, of the city of St. Louis, state of Missouri, parties of the second part, witnesseth: That whereas, the said parties of the second part propose and intend to organize a corporation under the laws of the state of Missouri, and particularly under Act March 21, 1891, of the general assembly of said state, with a capital stock of one million dollars ($1,000,000), six hundred thousand dollars ($600,000) of the same to be preferred and to draw a preferred dividend of six per cent. (6%) per annum, said company to be known and styled the 'Century Building Company,' or such other name as may be hereafter agreed upon, said company to be organized for the purpose of acquiring a certain lease, dated the 19th day of June, 1895, entered into between said party of the first part and the Central Realty & Improvement Company, which lease covers certain premises in the city of St. Louis, at the northwest corner of Ninth and Olive streets, in said city, and to which lease reference is hereby made as part hereof, and also for the further purpose of erecting a building on said premises, including the premises covered by the Durning lease, referred to in said last-mentioned lease; and whereas, the said parties of the second part have requested, and do hereby request, the said party of the first part to accept and receive from said proposed corporation, or the said parties of the second part, in payment of four (4) installments of rent provided for in said lease,—said four (4) installments being respectively due August 1, 1895, the first day of November, 1895, the first day of February, 1896, and the first day of May, 1896, and aggregating thirty-five thousand dollars ($35,000) and being for eight thousand seven hundred and fifty dollars ($8,750) each,—three hundred and fifty (350) shares at par of the preferred capital stock of said proposed corporation, or thirty-five thousand dollars ($35,-000), divided into four (4) installments equal to said installments of rent; and whereas, the said party of the first part has agreed to accept said shares of stock for said installments of rent, at and upon the times they become due, upon the condition that the said parties of the second part agree, on or before the 1st day of July, 1898, to purchase said shares of preferred stock from said party of the first part, at and for the price of thirty-five thousand dollars ($35,000), and in addition thereto an amount equal to interest at the rate of six per cent. (6%) per annum on the said several installments of rent from the time they become severally due and payable, less any dividend which the said party of the first part may have received on account of said preferred stock: Now therefore, the said parties of the second part do hereby agree and bind themselves to purchase said preferred stock from said party of the first part, as hereinbefore recited, and to pay therefor the price hereinbefore set forth; and the said party of the first part agrees to sell and transfer to said parties of the second part the said stock at the times and for the price hereinbefore set forth. This contract shall be binding on the said parties, respectively, and as well their respective heirs, executors, administrators, and assigns.

"In witness whereof, the said parties have hereunto set their hands the day and year first hereinbefore written.

"[Signed]      John W. Kauffman.
"Henry Raeder.
"Jonathan Clark.
"B. S. Crocker.
"A. S. Coffin.
"C. W. Wall.
"A. O. Rule.
"R. F. Kilgen.
"McCormick-Kilgen-Rule Real-Estate Co.,
"[Corporate Seal.]      R. F. Kilgen, V. Pres.,
"A. O. Rule, Secy."

Kauffman satisfied the debt and discharged the lessee and its assignee from their liability for the $35,000 rent which fell due on and before the 1st day of

May, 1896, and took the 350 shares of the preferred capital stock of the Century Building Company according to his covenant in this agreement. Some time in 1897 he assigned this stock and delivered the agreement to the Merchants-Laclede National Bank, a corporation engaged in a general banking business in the city of St. Louis, Mo., as collateral security for an indebtedness which he owed the bank. In September, 1898, he paid his debt to the bank, and redeemed and recovered possession of the certificates and the agreement. During all the time between the execution of the agreement and the trial of this action the stock and the agreement have been under his control, and he has been able, willing, and ready to assign and deliver them to the defendants, upon their payment of the $35,000 and interest, pursuant to the terms of their agreement. On May 16, 1898, he caused the cashier of the Merchants-Laclede National Bank to send the following letter to each of the obligors in this agreement to pay the $35,000, and each of them received the letter in the ordinary course of the mail:

"Dear Sir: As collateral security to a loan made to John W. Kauffman, we hold 350 shares of the preferred stock of the Century Building Co., together with an agreement, signed by you and others, agreeing to pay for said stock $35,000, with interest, amounting to $4,313.74 to July 1st next, the maturity of the agreement. We desire to notify you that we hold the stock and agreement, and to request you to arrange to take up your agreement on the date named, namely July 1st, 1898.           Yours, truly,
           "[Signed]                George E. Hoffman, Cashier."

On July 18, 1898, the attorneys for Mr. Kauffman wrote to the defendant Jonathan Clark that the contract had not been performed on his part, that Mr. Kauffman proposed to take immediate measures to enforce his rights as defined in the agreement, and asked him to advise them if it would be necessary for them to resort to the courts to assert the rights of their client. Three days later Mr. Clark answered that he was ready at any time to perform his part of the contract, that he supposed that if legal action was necessary to collect the claim that action must be taken against all the parties to the contract, so that it would be of no avail for him to pay his proportion of the amount due, but that if Mr. Kauffman would accept the proposition he would pay him $5,000 and permit him to retain his proportion of the stock, provided he would release the writer from any further obligation on the contract. In October, 1898, one of the attorneys of the plaintiff in error again demanded of Mr. Clark the payment of the amount owing upon the contract, and he declined to pay or take any further action in the matter, and waived a tender or production of the certificates of stock and their assignment. He declared that he did not intend to do anything about performing the contract, and that it would make no difference in his decision if the certificates of stock were presented. Upon this state of facts the court below directed a verdict for the defendants on the sole ground that no tender or offer of the certificates of stock and an assignment thereof to the defendants was made by the plaintiff or waived by the defendants on or before July 1, 1898, although it was conceded that they were in the control of the plaintiff, who was ready and willing to transfer them during this time, and that within four months after July 1, 1898, a proper demand of performance was made of the defendant Clark, and he refused to perform and waived the production and offer of the certificates and assignment.

Shepard Barclay and J. E. McKeighan (M. F. Watts, on the brief), for plaintiff in error.

Wm. E. Garvin (R. L. McLaran and Jas. P. Dawson, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

May one party to a contract, who has accepted and retained the benefits of its substantial performance by the other party, retain and

enjoy these benefits, and still rescind the agreement, and escape all the burdens and liabilities of the contract, because the first party has failed to perform at the exact time stipulated therein a subordinate covenant, incidental to the main purpose of the agreement, which goes only to a part of the consideration, and whose breach may be compensated by damages? This is the most important question which this case presents. It will be conducive to brevity and perspicuity to obtain a clear idea of the relations of the parties to the agreement to be considered, their respective covenants therein, and the moving considerations which induced them to make their stipulations, before entering upon the discussion of this issue. This conception must be secured by the light of the fundamental rule that the situation of the parties when the contract was made, its subject-matter, and the purpose of its execution are material to determine the intention of the parties and the meaning of the terms they used, and that when these are ascertained they must prevail over the dry words of the stipulations. Accumulator Co. v. Dubuque St. Ry. Co., 64 Fed. 70, 74, 12 C. C. A. 37, 41, 42; 27 U. S. App. 364, 372; City of Salt Lake City v. Smith (C. C. A.) 104 Fed. 457, 462.

On June 19, 1895, when this agreement was made, the plaintiff, John W. Kauffman, had made a lease of the valuable premises in the heart of the city of St. Louis involved in the negotiation to the Central Realty & Improvement Company for a term of years, whereby he was secured—First, by his legal right to eject the lessee and to take back the premises upon default in the payment of any installment of the rent; and, second, by the covenant of the lessee, in the receipt during the year then ensuing of a rent of $35,000 in quarterly payments. The defendants had formed the project of organizing a corporation, the Century Building Company, of purchasing this lease from the lessee, of assuming its covenants, and of constructing a building on the leased premises in the name of this prospective corporation. They could derive no rents or income from the premises during the year then ensuing, while the building was in course of construction, and they desired to carry the time of payment of this $35,000 forward to a period when the building would be completed and the property would be yielding an income. For this purpose they induced the plaintiff to make the contract under consideration. In this agreement the plaintiff and the defendants made certain covenants with each other. By the dry words of the contract the plaintiff covenanted to accept preferred stock of the Century Company at its par value for the $35,000 rent which was coming due in the then ensuing year, and to assign and transfer this stock to the defendants and their associates for $35,000 and interest thereon at 6 per cent. per annum from the time that the rent fell due by the terms of the lease. On the other hand, the defendants covenanted to pay this $35,000 and interest to the plaintiff on or before July 1, 1898. The legal effect, the real meaning, of the agreement was that Kauffman covenanted to release (1) the security of his right to eject the lessee and its assignee, and to recover back the premises, for a failure to pay any installment of this rent, and (2) the security of his lessee's agreement to pay it, and to accept in lieu of this

security the personal covenant of the defendants that they would pay the rent, with interest, on or before July 1, 1898, and the preferred stock of the prospective corporation, which he agreed to hold and to deliver to the defendants upon their performance of their covenant to pay the rent. The considerations which Kauffman agreed to give to the defendants for their covenant to pay the rent and interest were (1) the use by the prospective corporation of the leased premises for a year without the payment of any rent; (2) the release of the premises from Kauffman's right to retake them for the failure to pay any installment of this rent; (3) the release of the realty company and of its proposed assignee, the Century Company, from liability to pay this rent; and (4) the assignment and transfer of the 350 shares of stock. The single consideration which the defendants agreed to give to the plaintiff for all these covenants was the payment of the $35,000 and interest on or before July 1, 1898. Thus it will be seen that the main purpose of the contract was the novation, the release by the plaintiff of the leased premises, of the lessee and of its proposed assignee from liability for the rent, and the covenant of the defendants to pay it with interest. The desideratum which induced the agreement and which went to the whole consideration of both sides was this novation. Without that the contract would never have been made. The covenant of Kauffman to take, to hold, and to assign and transfer the stock to the defendants was subordinate and incidental to the main purpose of the agreement, never induced its making, and went only to a part of the consideration. It was not their prospective procurement of this stock that induced the defendants to promise to pay the $35,000 and interest, but it was the use of the premises by their corporation without the payment of rent for a year, and the release of the leased premises, of the lessee, and of its proposed assignee from liability for this payment. They contemplated organizing the proposed corporation and issuing its stock themselves, and they were not hiring strangers to purchase this stock for them. Nor was it the prospective acquisition of this stock, which this contract compelled Kauffman to hold in trust and to transfer to the defendants, that induced the plaintiff to agree to release his property, his lessee, and its proposed assignee from liability for the rent; but it was the personal covenant of the defendants to pay it. The plaintiff was not desirous of purchasing the stock, but the defendants, by means of their covenant to pay the rent and interest, hired him to accept and hold it until they paid it. The terms of the agreement are not conditioned by either the market price or the agreed value of the stock as in a contract of sale, but solely by the amount of the rent and the interest upon it. Thus the situation of the parties when the contract was made, the ends they sought to attain, and the very terms of the agreement compel the conclusion that its main purpose was the novation, that the stipulation concerning the stock went only to a part of the consideration and was subordinate and incidental to this purpose, while the covenants which went to the whole consideration of the agreement, those which actually induced the contract, were, on the one hand, the promise of the plaintiff to release the property, the lessee, and

its assignee from liability for the rent, and, on the other, the covenant of the defendants to pay it, with interest, on or before July 1, 1898.

Now the plaintiff has performed the substantial parts of his covenants, and the defendants have accepted and retained the substantial benefits which they sought to secure by the performance of his covenants, while they have refused to perform any portion of their own. The plaintiff has released his property, his lessee, and its assignee, the Century Company, from liability for the $35,000 rent, has furnished the use of his property to the defendants' corporation for a year without the payment of any rent, has accepted and held the preferred stock from 1896 until the present time, and has offered and still offers to assign and deliver it to the defendants, as he agreed to do. The defendants have accepted, enjoyed, and still retain the use of the leased premises by their corporation during that year without the payment of rent, and the release of the property, of the lessee, and of its assignee from liability for this $35,000. They have received and retained the great desiderata which induced them to make their promise, and yet they refuse to pay a dollar for these benefits and insist that they are absolved from all liability because the plaintiff did not offer to assign and deliver the stock to them in accordance with every legal technicality on the very day when their obligation matured, although he was always ready and willing, and within four months thereafter he offered to do so in compliance with every requirement of the law which the defendants did not waive. Can a party to a contract retain all the benefits of a substantial performance of it by the other party, and then escape all its burdens and repudiate all his obligations by means of such a technicality as this? There are two principles of law which forbid such a manifest injustice and compel a negative answer to this question. This issue will be considered and discussed on the assumption that the defendants' theory of this case is sustained by the facts,—on the assumption that the plaintiff made no sufficient offer to assign or deliver the stock until after July 1, 1898, and that his failure to make this offer was never waived by the defendants. The evidence, however, is conclusive that within four months after that date an adequate offer on the part of the plaintiff to complete his performance of the agreement was made, and still the defendants refused to pay any part of the $35,000 and interest.

One of the rules of law which compels a negative answer to the question now under consideration is that when a contract has been partially executed, and one of the parties has derived substantial benefits or has imposed upon the other material losses through the latter's partial performance of the agreement, then the first party cannot rescind the contract on account of the failure of the second party to complete his performance, but the agreement must stand, the first party must perform his part of it, and his only remedy for the failure of the second party to completely perform is compensation in damages for that breach. German Sav. Inst. v. De La Vergne Refrigerating Mach. Co., 70 Fed. 146, 150, 17 C. C. A. 34, 38, 36 U. S. App. 184, 190; 1 Chit. Pl. (16th Am. Ed.) *333; Barbee v. Willard, 4 Mc-

Lean, 356, 359, Fed. Cas. No. 969; Hunt v. Silk, 5 East, 449; Hammond v. Buckmaster, 22 Vt. 375; Brown v. Witter, 10 Ohio, 143; Dodsworth v. Iron Works, 13 C. C. A. 552, 557, 66 Fed. 483; Swain v. Seamens, 9 Wall. 254, 272, 19 L. Ed. 554; Beck v. Bridgman, 40 Ark. 382, 390; Andrews v. Heusler, 6 Wall. 254, 258, 18 L. Ed. 737; Conner v. Henderson, 15 Mass. 319, 321; Teter v. Hinders, 19 Ind. 93; Howard v. Hayes, 47 N. Y. Super. Ct. 89, 103; Welsh v. Gossler, Id. 112; Underwood v. Wolf, 131 Ill. 425, 23 N. E. 598; Brown v. Foster, 108 N. Y. 387, 15 N. E. 608; Vanderbilt v. Iron Works, 25 Wend. 665; Lyon v. Bertram, 20 How. 149, 153–155, 15 L. Ed. 847; Clark v. Steel Works, 3 C. C. A. 600, 53 Fed. 494, 499; Voorhees v. Earl, 2 Hill, 288, 294; Barnett v. Stanton, 2 Ala. 181; Churchill v. Holton, 38 Minn. 519, 38 N. W. 611; Treadwell v. Reynolds, 39 Conn. 31; 21 Am. & Eng. Enc. Law, 557, note 2. It is only when the parties to the agreement can be placed in statu quo that one may rescind or repudiate the entire contract for the failure of the other to perform it. When one party has received the benefits of substantial performance by the other without paying for them the price agreed on, and he cannot or does not return these benefits, it is manifestly unjust to permit him to retain them without paying or doing as he promised to pay or do on account of his receipt of them. In order to avoid such an injustice, the party who has substantially performed may enforce specific performance of the covenants of the other party, or may recover damages for their breach without plea or proof of complete performance, while the defendant, on the other hand, may recover by counterclaim or by an independent action the damages which he has sustained from the plaintiff's failure to completely fulfill his covenants. This rule is settled. In German Sav. Inst. v. De La Vergne Refrigerating Mach. Co., 70 Fed. 146, 150, 17 C. C. A. 34, 38, 36 U. S. App. 184, 190, this court considered its reason, its justice, and its application to cases of the nature of that now in hand at considerable length, cited many authorities in its support, reviewed some decisions that illustrate it, and, without repeating that discussion here, we content ourselves with a reference to the opinion in that case, and with the following apt and terse statement of the rule and its reason from 1 Chit. Pl. *333:

"Where the plaintiff's covenant or stipulation constituted only a part of the consideration of the defendant's contract, and the defendant has actually received a partial benefit, and the breach on the part of the plaintiff might be compensated in damages, an action may be supported against the defendant, without averring performance by the plaintiff; for, where a party has received a part of the consideration for his agreement, it would be unjust that, because he had not had the whole, he should enjoy that part without paying or doing anything for it, and therefore the law obliges him to perform the agreement on his part, and leaves him to his remedy to recover any damage he may have sustained in not having received the whole consideration."

An application of this rule to this case will not permit the injustice of allowing the defendants to deprive the plaintiff of the $35,000 rent and interest which is justly his due, while it will enable them to reduce his recovery by the amount of any damages which they sustained because the plaintiff did not legally offer them the assignment and delivery of the stock on July 1, 1898, when they ought to have

paid and he ought to have delivered the stock. The case falls far within the rule. The covenant on account of the technical breach of which the defendants sought to repudiate all liability—the covenant to assign and deliver the stock to them—was a part, and only a small part, of the consideration of their covenant to pay the rent and interest. The largest part of the consideration, nay, the real consideration, for that covenant, was the use of the leased premises by their corporation for a year without the payment of rent, and the release of the land, of the lessee, and of its assignee from liability therefor. This moving consideration the defendants have received, and they have thus derived not only a partial benefit, but all the substantial benefits of a performance of the contract. The record does not disclose the market value of the stock, or whether or not it ever had any actual value, and the only intimation upon the subject is that one of the nine parties who were bound to pay the $35,000 and interest offered the plaintiff $5,000 and his share of the stock to release him from his liability under the agreement. The breach by the plaintiff of his contract to deliver the stock on July 1, 1898, can be readily compensated in damages. Those damages are simply the diminution in the market value of the stock between July 1, 1898, and the day in October when it is certain that a sufficient offer to assign and deliver it was made. The rule which we have been considering prohibits the defendants from retaining the benefits of the substantial performance of this contract by the plaintiff, and then escaping all its substantial burdens on account of his technical failure to offer them the stock on the day when they agreed, but failed, to pay him the $35,000 and interest, and its application to this case will prevent injustice and work no wrong or inequity to any of the parties to this agreement.

There is another principle of law which equally prohibits the maintenance of the theory of the defendants in this case. It is stated by Lord Mansfield in Boone v. Eyre, 1 H. Bl. 273, in these words:

"Where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other; but where they only go to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent." Ritchie v. Atkinson, 10 East, 295; Stavers v. Curling, 3 Bing. N. C. 355; Lowber v. Bangs, 2 Wall. 728, 736, 17 L. Ed. 768; Hague v. Ahrens, 53 Fed. 58, 3 C. C. A. 426, 3 U. S. App. 231.

The breach of a covenant of the first class—a dependent covenant, one which goes to the whole consideration of the contract—gives to the injured party the right to treat the entire contract as broken and to recover damages for a total breach. Leopold v. Salkey, 89 Ill. 412; Keck v. Bieber (Pa. Sup.) 24 Atl. 170; Parker v. Russell, 133 Mass. 74; Railroad Co. v. Van Deusen, 29 Mich. 431; Richmond v. Railroad Co., 40 Iowa, 264, 275. But a breach of a covenant of the second class, an independent covenant, a covenant which does not go to the whole consideration of the contract and is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract, does not authorize the injured party to rescind the agreement, but he is still bound to perform his part of it, and his only remedy is a recovery of damages for the breach. Union Pac. Ry. Co. v. Travelers' Ins. Co., 83 Fed. 676, 679, 28 C. C. A. 1, 4, 49 U. S. App. 752,

759; Pordage v. Cole, 1 Saund. 320, note; Campbell v. Jones, 6 Term R. 570, 573; Surplice v. Farnsworth, 7 Man. & G. 576, 584; Obermyer v. Nichols, 6 Bin. 159, 160, 164; Burnes v. McCubbin, 3 Kan. 221, 226; Butler v. Manny, 52 Mo. 497, 506; Turner v. Mellier, 59 Mo. 527, 536; Pepper v. Haight, 20 Barb. 429, 440; Appalachian Co. v. Buchanan, 43 U. S. App. 265, 20 C. C. A. 33, 73 Fed. 1007. Now, the covenant of the plaintiff to assign and transfer the stock to the defendants did not go to the whole consideration of the contract, but was subordinate and incidental to its main purpose, as has already been shown. Its breach was susceptible of compensation in damages. Therefore, even though the plaintiff committed a technical breach of it, the defendants, who had accomplished the main purpose of their contract, and had accepted the benefits of the plaintiff's performance of that part of his covenants which went to the whole consideration of the agreement, the use of the leased premises by their corporation for a year without payment of the rent, and the release of the premises, of the lessee, and of its assignee from liability therefor, were still bound by their agreement to pay this rent and interest, and their only remedy for the plaintiff's breach was compensation in damages.

The application of the two rules which have now been considered to the trial of this case will eventuate in a fair, just, and equitable result. The plaintiff will receive the rent and interest which the defendants agreed to pay him, less any damages which the defendants have sustained by the diminution in the market value of the stock between July 1, 1898, when he should have offered to assign and deliver it, and the day thereafter when he did make a sufficient offer to do so. The defendants will receive the stock which the plaintiff agreed to hold and to assign and to deliver to them, and they will pay the $35,-000 and interest, less any damages they sustained by the failure of the plaintiff to make his offer to complete the performance of his agreement in time. The manifest justice and equity of this result vindicate the purpose and the wisdom of the principles of law which compel it, and commend them to the reason and the judgment.

Counsel for defendants in error have cited and discussed a large number of decisions which illustrate established and salutary rules of law that properly govern the cases in which those decisions were rendered, but which are inapplicable to the case at bar. One class of these decisions is well represented by Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 273, 29 L. Ed. 366, Bowes v. Shand, 2 App. Cas. 467, 468, Bordenave v. Gregory, 5 East, 107, Bank v. Hagner, 1 Pet. 455, 7 L. Ed. 219, Telfener v. Russ, 162 U. S. 170, 16 Sup. Ct. 695, 40 L. Ed. 930, and Kelley v. Upton, 5 Duer, 336. The opinions in these cases relate to the performance of executory contracts of sale, under which the defendants had received no benefits from partial performance by the plaintiffs for which they had not paid; and it is there properly held that without performance or offer of performance at the date by the plaintiffs they could not maintain actions, upon the principle, already adverted to, that where the plaintiff defaults and the parties can be put in statu quo the defendant may rescind. The distinction between these cases and the case in hand is that the defendants in the former had not received and retained any benefits derived from the

partial performance by the plaintiffs for which they had not paid the contract price, and the covenants which the plaintiffs had failed to perform were dependent covenants, which went to the whole consideration of the contract, while the defendants in this case have received and enjoyed the benefits of a substantial performance by the plaintiff without paying the agreed consideration therefor, and the covenant of which the plaintiff has committed a technical breach is a subordinate, independent covenant, incidental to the chief object of the agreement, and his breach may be readily compensated in damages. This distinction is noted by Mr. Justice Gray in his opinion in Norrington v. Wright, where he says:

"This case wholly differs from that of Lyon v. Bertram, 20 How. 149, 15 L. Ed. 847, in which the buyer of a specific lot of goods accepted and used part of them with full means of previously ascertaining whether they conformed to the contract." 115 U. S. 188, 205, 6 Sup. Ct. 12, 29 L. Ed. 366.

It is clearly pointed out by this court in German Sav. Inst. v. De La Vergne Refrigerating Mach. Co., 17 C. C. A. 34, 70 Fed., at page 154, and by the circuit court of appeals in the Third circuit in Clark v. Steel Works, 53 Fed. 494, 498, 3 C. C. A. 600, 603, 3 U. S. App. 358, 364, in these words:

"If the defendants in Norrington v. Wright had retained and used the railroad iron delivered to them after they had discovered the seller's failure to ship the stipulated quantities in February and March, they would not have been justified in rescinding their contract."

Another class of authorities upon which counsel for the defendants rely is illustrated by Waterman v. Banks, 144 U. S. 394, 403, 12 Sup. Ct. 646, 36 L. Ed. 479, Kelsey v. Crowther, 162 U. S. 404, 408, 16 Sup. Ct. 808, 40 L. Ed. 1017, Doloret v. Rothschild, 1 Sim. & S. 590, and Henderson v. Wheaton, 139 Ill. 581, 28 N. E. 1100. These are cases upon option contracts, upon agreements in which the liability of the parties on one side is not fixed by the covenants in the contracts at the time they are signed, but they simply agree that they will become liable to do certain acts or to pay certain moneys if within fixed times the parties upon the other side of the contracts choose to give certain notices or to do certain acts. They are governed by the indisputable rule that time is of the essence of such an offer to make an agreement, and that unless he who has the option to fix the liability of the opposite party to the contract exercises it, and does the act or gives the notice prescribed to evidence his choice in the time and manner specified in the contract, the liability never comes into being, and no action can be maintained upon it. The rule upon this subject which has received the sanction of the supreme court is stated in Waterman v. Banks, 144 U. S. 394, 403, 12 Sup. Ct. 646, 36 L. Ed. 479. It is in brief that, where one agrees to sell and deliver and another agrees to buy and pay for property on a certain day, time is not of the essence of the contract, and the fact that the day fixed passes without payment or delivery, or offer to do either, will not entitle either party to refuse to complete it; but that, when one party to a contract agrees to do some act if the other chooses to give a specified notice or to perform a specified deed or act within a time certain, there time is of the

essence of the contract, and a failure to give the notice or do the act prevents the creation of the liability, because the contract in its inception is a mere offer to become liable on certain terms, and, if the offer is not accepted, of course no liability is created. Cases of this character have no bearing on the questions at issue in this case (1) because the defendants in them have not received the benefits of a partial performance of the covenants of the plaintiff, (2) because the options which the plaintiffs failed to exercise went to the entire considerations of the contracts, while the covenant which the plaintiff has broken goes only to a part of the consideration of this agreement, and (3) because in those cases the parties upon one side of the contracts were by the terms of their agreements given the choice of creating or refusing to create the liability of the parties upon the other side of the contracts, by certain prescribed acts which they might do after the contracts were made, while in the case at bar neither the plaintiff nor the defendants secured any such option. The moment this contract was made all the rights and all the liabilities of the parties to it were irrevocably fixed by the covenants it contained. The plaintiff agreed absolutely to release the leased premises, the lessee, and its assignee from liability for rent for the year 1895–96, to take the preferred stock, and to assign and deliver it to the defendants. The defendants covenanted unconditionally to pay the rent and interest on or before July 1, 1898. One who undertakes by a promissory note to pay a sum of money on or before a certain day makes as absolute a contract to pay it as when he agrees to make his payment on a day certain. When the parties to this agreement had signed and delivered it, their rights and liabilities under it were absolutely fixed. Neither party had any choice or option to fulfill or accept the fulfillment of any covenant in the agreement. Either party could maintain an action for the breach of any covenant made by the other, and no choice or option of liability was left to either. The decisions upon option contracts have no relevancy to the issue presented in this case, and they are here dismissed.

Cases have also been cited in which by the express terms of the contract time is made of the essence of the agreement, as in Shinn v. Roberts, 20 N. J. Law, 435, where there was an express stipulation that the deed should be ready on a day certain at 10 a. m., and that if the vendee did not pay the price at that time he forfeited all his rights under the contract of purchase. Other cases have been reviewed in which by express stipulation the fulfillment of one covenant was made a condition precedent to the performance of another, as in Washington v. Ogden, 1 Black, 450, 458, 17 L. Ed. 203, where the entire agreement was made "dependent on the surrender and cancelment of said contract with said Wright" within the 60 days limited for its performance. In these cases the courts properly held, in the one case that performance or an offer to perform, and in the other that surrender or cancellation of the contract with Wright, was indispensable to the enforcement of the agreement. But decisions of this character are irrelevant to the questions here in hand, because there are no express stipulations in the agreement in suit

that time shall be the essence of the contract, or that the performance of any act or the fulfillment of any covenant shall be a condition precedent to the exercise or to the fulfillment of any other, because in those cases the defendants had not received and retained the benefits of a partial performance by the plaintiffs, and because the covenants there broken were dependent covenants which went to the whole consideration of the contract.

A large number of cases have been discussed which simply hold that, before a party to mutual dependent covenants which are to be performed at the same time can maintain an action for the breach, he must perform or offer to perform his part of them, unless the offer is waived by the other party to the contract. Bailey v. Lay, 18 Colo. 405, 33 Pac. 407; Thorpe v. Thorpe, 1 Salk. 171; Hill v. Grigsby, 35 Cal. 656; Ackley v. Richman, 10 N. J. Law, 305; Barbee v. Willard, 4 McLean, 356, Fed. Cas. No. 969; Johnson v. Wygant, 11 Wend. 48; Summers v. Sleeth, 45 Ind. 598, Frey v. Johnson, 22 How. Prac. 316, 325. But none of these decisions hold that a failure of one party to perform or to offer to perform on the day fixed releases the other party from his obligation to fulfill his covenants. But one of them discusses the question whether it is necessary for one who has partially performed his covenants to the other to allege complete performance or offer to perform in order to maintain his action, and in that case (Fed. Cas. No. 969) the court cites Chit. Pl. *333, and declares that the true doctrine undoubtedly is that he is not required to do so. Moreover, the question these cases presented is immaterial to a decision of this case, because the fact is clearly established by the evidence and conceded by counsel for the defendants that a sufficient offer of complete performance was made by the plaintiff before this action was commenced.

This brief review of the leading cases upon which defendants' counsel rely will serve to show why they do not convince us that their clients ought not to be permitted to retain the plaintiff's substantial performance of his agreement and to entirely escape from its burdens. None of the decisions they cite were conditioned by such a partial performance, by the receipt and retention by the defendants of the benefits of the plaintiff's substantial performance, or by so slight a technical breach of a covenant so subordinate and incidental to the main purpose of the contract as those in the case at bar; and the principles of law which controlled the cases upon which they rely are irrelevant to the issues in this case, and, if applied, would work a great and manifest wrong. The facts of this case bring it squarely under the salutary rules that (1) when a covenant goes only to a part of the consideration of a contract, is incidental and subordinate to its main purpose, and its breach may be compensated in damages, such a breach does not warrant a rescission of the contract, but the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom, and (2) where one party to a contract has received and retained the benefits of a substantial partial performance of the agreement by the other party, who has failed to completely fulfill all his covenants, the first party can-

not retain the benefits and repudiate the burdens of the contract, but he is bound to perform his part of the agreement, and his remedy for the breach is limited to compensation in damages. The first party, upon plea and proof of his substantial partial performance, and without plea or proof of his complete performance, may maintain an action either for specific performance or for damages on account of the failure of the second party to perform, and the latter may secure his damages for the plaintiff's breach either by counterclaim or by an independent action. The failure of the court below to try this case in accordance with these established principles of the law necessitates a reversal of the judgment in favor of the defendants and another trial of this case.

The conclusion which has been reached renders it unnecessary to consider many of the questions which were presented and argued at the hearing of this case. It is based on the assumption that the plaintiff made no sufficient offer to assign and deliver the stock on July, 1, 1898, when the defendants were bound to pay their debt. Counsel for the plaintiff in error insists that this assumption is not well founded in fact or in law, and this question will now be briefly considered. On May 16, 1896, the plaintiff caused the cashier of the bank which held the stock and the contract as collateral to a loan which it had made to him to notify each of the obligors in the covenant to pay him the $35,000 and interest, that the bank held this stock and agreement as collateral security, and to request each of them to take them up pursuant to their covenant. This notice was susceptible of but one meaning, and that was that the stock and the agreement were in the bank, which was situated in the city of St. Louis, subject to the disposition of the obligors in the contract, upon their payment of the $35,000 and interest. It is contended by the defendants that the law required the plaintiff to seek out each of the defendants at his residence or place of business, and tender or offer him the stock on July 1, 1898, or to suffer the penalty of a default in the performance of his obligation. There are authorities which sustain this contention, but they are inapplicable to the facts and circumstances of this case. The law never requires the unreasonable, the impracticable, or the impossible. There were nine obligors in this covenant to pay the $35,000 and interest. There were nine different parties who were entitled to receive this stock upon the payment of this money. Their contract was to pay it on or before July 1, 1898. Some of them resided and were engaged in business in Chicago. Some resided and were engaged in business occupations in St. Louis. The cities are more than 300 miles apart. Each one of these obligors had the right under his contract to wait until the last moment of the business day of July 1, 1898, before he was called upon by the agreement to pay the debt. If the contract required the plaintiff to search out each of these obligors at his residence or place of business, and to tender him the stock on the last moment allowed him to pay the debt, in order to hold him liable upon his obligation, then its performance by the plaintiff was clearly impossible. It is said that if this is true it is the fault of the contract and the misfortune of the plaintiff,

and that the court cannot make a new contract for the parties. But the defect is not in the contract, but in its interpretation. It is the failure to apply to its construction the familiar rule that that interpretation which sustains and vitalizes an agreement, rather than that which paralyzes and destroys it, must be adopted. There is also a settled legal presumption, which conditions the interpretation of the contract and the intention of the parties to it, which should not be ignored. It is that they must have intended to make a valid and practicable contract, not one that was void or that could not be performed, and that, if there is any rational interpretation of the agreement which will render its performance practicable, that construction should prevail. Moreover, the parties to this agreement were not farmers or ranchmen, but they were business men, residing in great commercial cities, familiar with and practicing commercial usages. Now, let the contract be read in the light of these rules and presumptions, and in the light of the situation and knowledge of the parties when they signed it, and let us see how they intended that it should be performed. The subject-matter of the contract was in the city of St. Louis. The agreement was made, and was presumably to be performed, in that city. The creditor, Kauffman, and a part of the debtors, resided in St. Louis, while the remainder were residents of the city of Chicago, more than 300 miles distant. The parties to the agreement were men engaged in business in large cities. Such men are not accustomed to transact their business, to make the delivery of personal property, or to pay their debts at their places of residence. They ordinarily conduct such transactions at convenient banks, in offices, or in shops during the business hours of the day. These debtors knew all these things when they made this agreement, and they also knew that it was impossible for their creditor to search out and tender this stock to each one of them on the last moment of the business day in such a way as to charge more than one of them, and yet each and all of them promised to pay this debt, and they intended to perform that promise and to make a valid and practicable agreement. The conclusion is irresistible that they never intended to require, and Kauffman never intended to agree to make, any tender or delivery of the stock to each one of them at their several places of residence or of business on the day when they agreed to pay the debt. The conclusion is irresistible that all they intended to require, and all that Kauffman agreed to do, was that he should make such a reasonable delivery, or such a reasonable and practicable offer to deliver the stock, as business men under such circumstances would naturally contemplate. The vendor of personal property is not ordinarily required to carry it to the vendee and there to tender it to him, and the reason is that such a requirement is unnecessary and unreasonable. It would have been far more unnecessary and unreasonable to have required the plaintiff to search out each one of these nine debtors and to tender or offer to deliver to them the stock on the last moment of the business day of July 1, 1898, and the contract called for no such performance.

Commercial agreements must be interpreted in the light of com-

mercial usages, of reason, and of justice. It must be presumed that the intention of the parties to them regarding their performance, as well as their terms, is reasonable, fair, and practicable; and where a commercial contract between business men requires personal property, such as certificates of stock in a corporation, to be delivered to several parties at the same time that it requires them to pay a sum certain to the holder of the stock, and no place of delivery is named in the agreement, a deposit of the property in a convenient business institution in the city in which the contract was made, in which its subject-matter was situated, and in which it was presumably to be performed, and a timely notice to the debtors that it has been so deposited, is a fair, reasonable, and sufficient tender and offer of delivery by the holder of the property. Benj. Sales, §§ 679, 707; Tied. Sales, §§ 94, 96, 207; Carpenter v. Holcomb, 105 Mass. 280, 284; Wilks v. Smith, 10 Mees. & W. 355; Heard v. Lodge, 20 Pick. 53, 60; Cobb v. Hall, 33 Vt. 233, 238; 2 Kent, Comm. *505. The plaintiff notified each one of the defendants, by means of the letter of the bank, that he was ready and willing to surrender the stock and the agreement upon the payment of the defendants' obligation, and that the stock was in the bank at their disposal whenever such payment should be made. They did not pay. They suggested no other way for the performance of the agreement. They were silent. They neither performed nor offered to perform their part of the agreement, nor did they object in any way to the time, the place, or the manner of the plaintiff's offer. They knew, from the letter which they received, not only that the plaintiff offered them the stock, but that he had placed it in the bank subject to their disposal upon their payment of the debt they had promised to discharge. In view of the facts that the defendants in this case were bound under the law to pay this debt on or before July 1, 1898, whether the plaintiff completed his performance or not; that there were nine promisors in this covenant to pay; that each one was entitled to the last moment of the business day of July 1, 1898, in which to perform his promise; that each one was entitled to the stock or a part of it when he paid; that their residences and places of business were more than 300 miles apart; that the contract was made, that it was presumably to be performed, and that its subject-matter was located in St. Louis; that the letter of May 16, 1898, informed the defendants that the plaintiff had placed the stock in a convenient business institution in that city subject to their disposal upon the payment of their debt; and that they neither objected to the course he pursued, nor performed nor offered to perform their agreement,—our conclusion is that the plaintiff's offer of performance was fair, reasonable, and sufficient. The judgment below is accordingly reversed, and the case is remanded to the court below, with instructions to grant a new trial in accordance with the views expressed in this opinion.

THAYER, Circuit Judge (dissenting). I am not able to concur in the foregoing opinion, and accordingly express the reasons for my dissent, doing so with as much brevity as possible. The opinion

of my associates, as I view it, deals for the most part with principles of the law of contract, which, however correctly stated and reinforced by authority, are not in my judgment applicable to the case in hand. By the terms of the agreement out of which this controversy arises the plaintiff below agreed to take certain shares of preferred stock in the Central Building Company "in payment for four installments of rent" under his lease, as the same became due. I can perceive no sufficient reason for saying that the delivery of these shares of stock did not operate as payment for the four installments of rent, and that the plaintiff merely held the stock when delivered in trust and as collateral security for the rent, as the majority of the court seem to hold. This view is not only opposed to the language of the agreement, which recites that the defendants had requested the plaintiff to take the stock "in payment of four installments of rent," and that he had agreed to do so, but it is not in harmony with the conduct of the plaintiff himself, since it appears that he hypothecated the stock to secure his indebtedness to the Merchants-Laclede National Bank and that it remained hypothecated with that institution for at least two months after the defendants' option to purchase the stock expired; that is to say, for two months subsequent to July 1, 1898. In view of the language of the agreement and the conduct of the parties, I am of opinion that the stock became the absolute property of the plaintiff as soon as it was delivered to him; that it was taken in payment of the rent, and extinguished the same; that the plaintiff had an undoubted right to hypothecate it; and that there is no substantial foundation for the novation theory which is outlined in the opinion of the majority. As I feel constrained to construe the contract, the parties entered into the following stipulations: The plaintiff agreed to accept the preferred stock in payment for certain rent which was to accrue, his motive being, doubtless, to aid in the construction of a valuable building on the leasehold premises, which would insure the payment of many future installments of rent that were to accrue under his lease, and at the same time greatly enhance the value of his property. On the other hand, the defendants agreed, if the stock was taken in payment of the rent, to purchase it from the plaintiff "on or before the 1st day of July, 1898," for a sum equal to the amount of rent which it had discharged, and the plaintiff agreed to sell the stock at that price. The result was an executory agreement for the sale of the stock, by virtue of which the defendants had the option to buy it at any time before July 1, 1898, when their obligation to take it and pay the purchase price became absolute. The plaintiff on his part had the right to call for performance on July 1, 1898, but not before that time. The contract in question is not essentially different from many contracts for the sale of stock and other securities which are daily made, whereby a vendee acquires the right to exact performance at any time intermediate the making of the agreement and a certain future date, whereas the vendor acquires the right to call for performance only at the latter date. The real question in the case, therefore, as I view it, is not the one stated at the commencement of the majority opinion, and declared to be

"the most important question"; but the question is whether the plaintiff's admitted failure to tender the stock on July 1, 1898, and to demand payment therefor, released the defendants from their obligation to perform. This was the question which was decided below in the affirmative, and, as I think, rightly decided. This is not a case, as I view it, where a question arises concerning the right of a person, who has accepted and retained the benefits accruing from a substantial performance of an agreement, to decline to pay for what he has received because of some slight default by the opposite party which may be compensated in damages. When the stock was accepted by the plaintiff, it paid for the installments of rent, because such was the express agreement of the parties, and presumptively, at least, the stock was adequate payment. After the stock was delivered the plaintiff held the defendants' obligation to buy it on or before July 1, 1898, at a given price; but to maintain an action on this obligation it was his duty to do whatever would be required of any other vendor of stock who agrees to sell and deliver the same on a certain future day, or on any intermediate day if the vendee elects to call for an earlier delivery. In such cases the rule is that on the day when the option expires the vendor must tender the stock and demand payment; time being of the essence. To put the vendee in default there must be an offer of the security sold and a demand for payment, or a waiver of the tender by the vendee. Waterman v. Banks, 144 U. S. 394, 12 Sup. Ct. 646, 36 L. Ed. 479; Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Kelsey v. Crowther, 162 U. S. 404, 408, 16 Sup. Ct. 808, 40 L. Ed. 1017; Kelley v. Upton, 5 Duer, 336; Summers v. Sleeth, 45 Ind. 598; Doloret v. Rothschild, 1 Sim. & S. 590; Shinn v. Roberts, 20 N. J. Law, 435, 444, 43 Am. Dec. 636; Stilwell v. Bowling, 36 Mo. 312; Henderson v. Wheaton, 139 Ill. 581, 28 N. E. 1100.

I do not understand that this rule of law is disputed, but the effort seems to be to differentiate the case at bar from those cited, and to show that the rule is inapplicable, on the ground that the contract in suit was not a contract of sale. Now, on the day when the plaintiff had the right to tender the stock in question and exact payment therefor, no such tender or demand was made. The plaintiff did not even have possession of the stock, but the same was then hypothecated to a third party, and remained in its hands for more than two months thereafter. The letter which was written by the pledgee of the stock on May 16, 1898, did not advise the defendants whether the Merchants-Laclede National Bank held the stock as the absolute owner or as pledgee. Neither did it advise the defendants that the bank was acting as agent for the plaintiff, or request the defendants to appoint a suitable place for the delivery of the stock on the day when the plaintiff was entitled to exact payment. The letter was silent on each of these essential points, and for that reason it imposed no liability on the defendants and called for no action on their part. The letter was entirely consistent with the view that the bank had become the absolute owner of the stock; and, if such was the fact, then the defendants were under no obligation to take the stock from it and pay for the same, since an executory agreement like the one in hand

is not assignable, and the plaintiff's assignee could not have enforced performance of the agreement to purchase. Boykin v. Campbell, 9 Mo. App. 495; Lansden v. McCarthy, 45 Mo. 106; Lawson, Cont. § 352. The letter of the bank was at most a mere notice that the plaintiff had parted with the stock, and, as it did not state that the bank was acting as agent for the plaintiff, the natural presumption would be that it was acting for itself and of its own volition. In my judgment, therefore, the letter in question did not alter the legal relations of the parties to any extent; and as there was no waiver by the defendants of their right to have the stock tendered to some one of them on the day the obligation to purchase became absolute, and as no request was made by the plaintiff to have them designate a place for delivery, I am of opinion that the trial court properly held that there could be no recovery, and that the judgment below should be affirmed.