### MILAM v. HINTON.

No. 17313—Opinion Filed Nov. 23, 1926.

**1. Appeal and Error—Sufficiency of Evidence in Trial to Court—Conclusiveness of General Finding.**

Where a case is tried to the court without a jury, a general finding in favor of one of the parties will be given the same weight as a verdict of a jury. and if there is any competent evidence reasonably tending to support the same, it will not be disturbed on appeal.

**2. Contracts—Written Contract Abrogated by Executed Oral Contract.**

Where H., by written agreement with T., agrees to give and does give immediate possession of land and all growing crops to T., and T. pays a portion of the purchase price and gives H. a post-dated check, and H. agrees to give possession of the residue of the land at a future date, and upon due date of the check the same is not paid, and T. and H. orally agree that H. may remain upon the land until the amount evidenced by the check is paid, provided H. will extend time of payment, held, the oral agreement when executed abrogates the written agreement, and the forbearance of H. is a consideration for the promise of T. to permit H. to occupy the residue of the land until the check is paid.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; George C. Crump, Assigned Judge.

Action by E. C. Hinton against Thomas M. Milam to recover a money judgment upon contract. Judgment for plaintiff. and defendant appeals. Affirmed.

Everest, Vaught & Brewer. for plaintiff in error.

C. D. Bennett, for defendant in error.

Opinion by RUTH, C. Plaintiff's petition alleges plaintiff was a tenant farmer on certain lands adjoining Oklahoma City on the northwest, the lands being owned by Joseph T. Brown; that about the 19th day of May, 1925, after plaintiff had planted his crops, defendant, Milam, came to the farm occupied by plaintiff, and told plaintiff, he, defendant, had purchased the land, and was in urgent need of possession of a portion of the same, as he wanted to lay it out in streets, alleys, lots, and blocks, and as a result of the conversation. the following agreement was duly executed:

"Oklahoma City, Okla.
"Contract Agreement.

"Made this 19th day of May, 1925, for $1,000 One $100 cash in hand paid, the bal., $900, to be paid when E. C. Hinton has moved off the Brown farm near Belle Isle and surrendered the place, Mr. Hinton to vacate by June 5, 1925.

"Gatton Miller.
"E. C. Hinton.
"Thos. M. Milam.

"Witnesses:
"George F. Wagner,
"W. M. Ingle."

Defendant thereupon gave plaintiff $100 and delivered to him a post-dated check as follows:

"Oklahoma City, Okla.
"June 1, 1925.
"No.———

"The American National Bank
"Pay to the order of E. C. Hinton $900
"Nine Hundred ————————/100 Dollars.
"T. M. Milam."

On back of the check was the following: "To be paid as per contract as to moving."

Plaintiff then alleges demand on June 1st, and at subsequent dates, and default, and prays judgment. Defendant admits the contract and check, and grounds his defense principally upon the failure of plaintiff to deliver possession of all the land on June 5, 1925, and for cross-petition alleges he has been damaged in the sum of $2,460, for which he prays judgment.

The cause was tried to the court, and judgment rendered for plaintiff, and defendant appeals, and this cause is now before this court for review upon petition in error and case-made.

Defendant's theory of this appeal is that:

"This was purely an action at law, based upon a written contract, and the court permitted the defendant in error to introduce evidence to contradict and vary the written contract, and in fact treated the whole contract as sounding in equity, and thereby made a new contract," etc.

"That the court committed error in permitting plaintiff to offer evidence tending to show that the original written contract has been abrogated by a subsequent oral agreement."

Defendant contends further that as plaintiff did not surrender all the premises, he was under no obligation to pay the check.

As a rule, when attorneys, as able as we know the attorneys in this case to be, know they have no legal leg to stand upon, this court is not burdened with extensive briefs and this case is no exception to the rule.

What the incompetent evidence admitted on behalf of plaintiff, or the rejected competent evidence offered on behalf of the defendant was, is not set out in the brief, but sometimes we are actuated by uncontrollable emotions to look closely into things it is not our strict duty to examine, just perhaps to gratify a curiosity to see what it is all about. The evidence in this case discloses that defendant, a well-known and astute real estate dealer, wanted to put on another subdivision. He approached Brown.

the owner, and offered $32,000 for this land and paid Brown $1,000. He then wanted to get the tenant off the land, or get partial possession, and so offered plaintiff $1,000 for his crop and partial possession, and paid plaintiff $100. Within a very few hours after plaintiff signed the agreement, defendant had men, teams, wagons and scrapers on the land, and almost before the sun went down he had a street one-half mile long cut through plaintiff's fields of cotton. He laid out streets, avenues, and alleys; laid off lots and blocks; and had stakes driven and flags flying, and bid fair to rival "Gump's Paradise Vista." All this was perfectly legitimate. Such men as defendant can make two cities grow overnight, where one grew before. He then very graciously gave to one Gatton Miller any cotton which he might find matured before the place was completely built up. Inside of ten days after getting plaintiff to sign the contract, something "cracked," and defendant had insufficient funds in bank to pay a $900 check. There is evidence tending to prove that defendant asked for as much as three days on several occasions in which to take up the check, and plaintiff testifies defendant asked for forbearance or an extension of time, and told plaintiff to stay in the house until the money was paid. Gatton Miller testified he was in defendant's office several times when defendant asked plaintiff for extensions of time and told plaintiff to stay on in the house until he got his money.

Plaintiff's attorney, whose honor is above reproach, testified defendant told him practically the same thing. Evidence was introduced to prove defendant had said when asked for the money that he was about $50,000 in debt—

"That he was like a man at sea in an open boat full of holes, some large and some small, and he had to plug the large ones first."

Despite all this, defendant insists his only reason for not paying the check was that plaintiff did not deliver the house on June 5th. The house and barn occupied less than one acre of ground, and defendant had the balance. The farmer was without crops or money to plant more, and under the evidence, if the trial court could have reached any other conclusion, it would have been one of the wonders of the legal world.

"Where a case is tried to the court without a jury, a general finding in favor of one of the parties will be given the same weight as a verdict of a jury, and if there is any competent evidence reasonably tending to support the same, it will not be dis-

turbed upon appeal." J. B. Edgar Grain Co. v. Kolp, 48 Okla. 92, 149 Pac. 1096; Beard v. Herndon, 84 Okla. 142, 203 Pac. 226; Anicker v. Doyle, 84 Okla. 62, 202 Pac. 281; Gayer v. Pearce, 86 Okla. 102, 206 Pac. 822; Billings v. News Pub. Co., 96 Okla. 167, 221 Pac. 12; Cooper v. Long, 93 Okla. 239, 220 Pac. 610.

Defendant next contends that, admitting a written contract may be abrogated by an executed oral agreement, and further admitting that there was evidence tending to show that there was an executed oral agreement by which plaintiff claimed a right to hold possession of the house until the check was paid, still, there was no consideration for such an agreement if it was in fact made. We can find no merit in this contention. We think the extension of time within which to pay the $900 was a sufficient consideration for the privilege of occupying this farm house for a few extra days or weeks.

Here we have the defendant saying to plaintiff:

"You give me time. I am in an open boat full of holes, and you occupy that house until I pay the check."

Here was a farmer deprived of his crops and his money. No money with which to rent a house, and defendant admitting he could not pay, still insists that plaintiff should go out on to the roadside. Surely he would have been in a position to exclaim:

"The foxes have their holes, the birds of the air have their nests, but the Son of Man hath not where to lay his head."

Section 5019, C. O. S. 1921, provides:

"Any benefit conferred, or agreed to be conferred upon the promisor, by any other person to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

See, also, Smith et al. v. Jos. W. Moon Buggy Co., 66 Okla. 333, 169 Pac. 875; Finola Mfg. Co. v. Paulson et al., 50 Okla. 591, 151 Pac. 195.

The clearest, most comprehensive exposition of the question under discussion we have been able to find, is found in the opinion of the Circuit Court of Appeals, as delivered by Judge Sanborn in Kauffman v. Raeder, 108 Fed. 171. At the bottom of page 177 of the opinion, it is said:

"One of the rules of law which compels a negative answer to the question now under consideration is that when a contract has been partially executed, and one of the parties has derived substantial benefits, or has imposed upon the other material losses through the latter's partial performance of the agreement, then the first party cannot rescind the contract on account of the failure of the second party to complete his performance, but the agreement must stand. the first party must perform his part of it, and his only remedy for the failure of the second party to completely perform is compensation in damages for that breach."

Judge Sanborn, after citing numerous authorities, proceeds as page 178, as follows:

"It is only when the parties to the agreement can be placed in statu quo that one may rescind or repudiate the entire contract for the failure of the other to perform it. When one party has received the benefits of substantial performance by the other, without paying for them the price agreed on, and he cannot or does not return these benefits, it is manifestly unjust to permit him to retain them without paying or doing as he promised to pay or do on account of his receipt of them. In order to avoid such an injustice. the party, who has substantially performed, may enforce specific performance of the covenants of the other party, or may recover damages for their breach without plea or proof of complete performance, while the defendant, on the other hand, may recover by counterclaim or by an independent action the damages which he has sustained from the plaintiff's failure to completely fulfill his covenants. The rule is settled."

Therefore, after consideration of the record, we can find no error in the judgment of the trial court, and the same should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 4 C. J. pp. 876, 879, §2853; 2 R. C. L. p 194; 1 R. C L. Supp. p. 433; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 79; 6 R. C. L Supp. p 73. (2) 13 C. J. pp. 344, 345, §194; p. 601, §623; 10 R. C. L. p. 1033.