## OSCAR BARNETT FOUNDRY CO. v. CROWE.

(Circuit Court of Appeals, Third Circuit. January 18, 1915. Rehearing Denied March 2, 1915.)

No. 1902.

1. CONTRACTS ☞262—EQUITY ☞65—INEQUITABLE CONDUCT OF COMPLAINANT.

The fact that a licensor under a patent himself violated his contract with the licensee, as was judicially determined in litigation between them, does not preclude him from maintaining a suit in equity to enforce a rescission because of subsequent breaches by the licensee.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1181–1183; Dec. Dig. ☞262; Equity, Cent. Dig. §§ 185–187; Dec. Dig. ☞65.]

2. CONTRACTS ☞261—GROUNDS FOR RESCISSION BY PARTY—BREACH.

A breach of a covenant, which goes to the whole consideration of a contract, gives to the injured party the right at his election to rescind the contract, but otherwise if the breach is of a covenant which is subordinate and incidental to the main purpose of the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1174–1180; Dec. Dig. ☞261.]

3. CONTRACTS ☞261—GROUNDS FOR RESCISSION—ELECTION TO RESCIND—NOTICE.

Complainant granted a license to defendant under a patent by a contract which required it to make and sell the patented article and at stated times to make returns and pay the stipulated royalties. By its own admission defendant entirely ceased to manufacture under the contract. On learning such fact, complainant notified defendant that the contract was rescinded. *Held*, that the breach of the covenant to make and sell went to the entire consideration, and that complainant's notice effected a rescission and termination of the contract from the time it was given.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1174–1180; Dec. Dig. ☞261.]

Appeal from the District Court of the United States for the District of New Jersey; Edward G. Bradford, Judge.

Suit in equity by Paul L. Crowe against the Oscar Barnett Foundry Company. Decree for complainant, and defendant appeals. Modified and affirmed.

For opinion below, see 213 Fed. 864. See also, 80 N. J. Eq. 112, 86 Atl. 915; 81 N. J. Eq. 515, 87 Atl. 160.

Russell M. Everett, of Newark, N. J., for appellant.
W. P. Preble, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from the decree of the District Court entered upon an opinion reported in 213 Fed. 864, which states in detail the involved controversy of which this case is but a part. For the purposes of this appeal, therefore, nothing more than a relatively brief outline of the facts is necessary.

This action, and others presently to be noticed, had their origin in a contract bearing date January 29, 1908, between Paul L. Crowe, the

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

complainant, and the Oscar Barnett Foundry Company, the defendant, hereafter referred to, respectively, by the names of Crowe and the foundry company.

Crowe was the inventor and patentee of certain improvements in mechanical stokers, which, by the contract, he licensed the foundry company to make and sell in a prescribed territory at a fixed royalty, under a covenant on his part to protect the licensee against infringement, in consideration of undertakings on the part of the foundry company that it would manufacture and sell stokers covered by the patents, that quarterly it would make returns of all stokers sold, and pay the royalties agreed upon.

Differences between the parties arose immediately. In 1909 Crowe sold stokers of the type of his invention in competition with the foundry company in its licensed territory; and in an action instituted against him by the foundry company in the Court of Chancery of the state of New Jersey, Crowe was held to have violated his contract, and against him damages were assessed to the amount of his profits. Oscar Barnett Foundry Co. v. Paul L. Crowe, 80 N. J. Eq. 112, 86 Atl. 915.

While that suit was pending, Crowe incorporated the Ironworks Company, through which he proceeded to do the same thing, where-upon, in 1911, the foundry company, claiming that Crowe, indirectly through his corporation, was infringing his own patents and violating his covenant to protect the foundry company against infringement, instituted another action in the Court of Chancery of the state of New Jersey against Crowe and the Ironworks Company. Before the determination of that case the foundry company instituted the third action in the same court against the Ironworks Company and Battelle & Renwick; the latter defendant being under contract with the former to purchase from it the alleged infringing stokers. Evidence was heard before the Vice Chancellor in the latter two proceedings on September 30 and October 1, 1912, and a decree entered against the defendants, finding breaches of the contract by Crowe, and restraining the defendants from using, manufacturing, and selling stokers of the type therein contemplated. From the decrees in the several cases, appeals were taken to the Court of Errors and Appeals, and affirmed. 80 N. J. Eq. 258, 86 Atl. 915; [1] 81 N. J. Eq. 515, 516, 87 Atl. 160. The actions in the courts of New Jersey relieve us of a consideration of the misconduct of Crowe, which, by those proceedings, has been judicially established.

At the hearing before the Vice Chancellor in the actions last named, it developed that, through all the controversies between the parties, the foundry company manufactured stokers, made reports, and paid royalties, as provided by the contract, until January 10, 1912, after which day, without notice or explanation, the foundry company ceased rendering quarterly reports and making quarterly payments. It also developed at the same hearing, upon the testimony of Gerald Hanney, secretary and treasurer of the foundry company, that some time be-

[1] Reported in full in the Atlantic Reporter; reported as a memorandum decision without opinion in 80 N. J. Eq. 258.

tween January 10, 1912, and September 30, 1912, the foundry company stopped making and selling stokers under the contract of license. The testimony, in part, is as follows:

"Q. What is the date of your last payment of royalty? A. January 10, 1912. Q. Your company is still making and selling stokers and installing stokers under this contract of license, is it not? A. No. Q. It has stopped working under the license, then? A. Yes."

Other testimony tends conclusively to prove the same thing.

While after January 10, 1912, Crowe knew perfectly well that the foundry company had failed to make quarterly reports of stokers sold and had refused to make quarterly payments of royalties earned, and therefore knew that the foundry company had made breaches of certain of its covenants, it was not until the hearing before the Vice Chancellor on September 30, 1912, it is claimed, that he had an intimation that the foundry company had ceased to make and sell stokers under the contract. Upon learning of the breach of its principal undertaking, Crowe promptly notified the foundry company that he considered the contract rescinded and himself discharged from its provisions. This act of Crowe occurred during the interval between the final hearing and the entry of the decree of the last two chancery proceedings. Hence the question of the rescission of the contract was neither raised before nor decided by the Court of Chancery in the cases referred to. That question, therefore, was left open for subsequent judicial determination.

Out of this irrepressible conflict the question of the rescission of the contract immediately arose and became the matter in dispute in an action instituted by Crowe against the foundry company in the United States District Court for the District of New Jersey, and now before this court on appeal. By the bill filed in that case, Crowe alleged that the defendant had not paid royalties under its contract nor made reports since January 10, 1912, and had announced that since that date it had stopped making stokers and had ceased to work under the contract, and prayed that an order rescinding and canceling the contract be made, together with a writ of injunction perpetually restraining the defendant from claiming any right under the contract to make or sell mechanical stokers, and also prayed for a discovery and accounting of profits. The foundry company challenged the right of Crowe to obtain redress in a court of equity, and denied that it had announced that it had ceased work under the contract, and said:

"It is not informed as to whether the stokers it has manufactured and sold since January 10, 1912, are within the scope of the contract of January 29, 1908, or not, and therefore leaves the plaintiff to make such proof thereof as he may."

The District Court entered a decree "that the contract of January 29 1908, between the parties, * * * be and the same is hereby rescinded and annulled as and of this 21st day of May, 1914 (the date of the decree); and it is further ordered, adjudged, and decreed that a perpetual injunction * * * be directed to the said defendant, Oscar Barnett Foundry Company, * * * enjoining and restraining them from operating or attempting to operate under said contract of January 29, 1908," further decreeing that the costs and expenses be

imposed upon the parties equally, and that neither party is entitled to an accounting or to recover damages as against the other.

Before the foundry company had time to take and complete an appeal from this decree, Crowe availed himself of its injunctive feature, charged the foundry company with disobedience, and moved the District Court to commit it for contempt. This motion was based upon the contention that the foundry company continued to make and sell stokers embodying the features of patents under which the foundry company theretofore was licensed by the contract, thereby raising, in a proceeding for contempt, a question whether the foundry company had violated the injunction by making stokers under rights lost by the rescission of the contract, or whether, by the stokers made, the foundry company had infringed the patents released by the rescission of the contract. Recognizing the difficulty, if not the impossibility, of determining these questions on a motion to commit for contempt, the District Court deferred action awaiting the decision by this court upon this appeal.

We are of opinion that the decree of the District Court, with certain modifications, should be affirmed. While in the main we agree with the learned court in its consideration of the testimony and disposition of the contentions thereupon made, nevertheless there are features of the case that suggest a somewhat different decree, entailing somewhat less perplexing consequences.

The questions that merit consideration are two in number; one being a question of evidence and the other of substantive law.

First. The foundry company insists that, before it can be adjudged to have committed a breach of the contract justifying rescission, Crowe must show, first, that it has ceased manufacturing the licensed device; and, second, that it "has failed to exert itself in good faith to install his apparatus wherever in reason it was feasible," relying upon the construction placed upon a contract of license in Neenan v. Otis Elevator Co. (C. C.) 180 Fed. 997, 1000, 1001. The rules applicable to the two cases are distinguished by the difference in the nature and scope of the covenants broken.

In the Neenan Case, the device licensed was an untried and somewhat experimental safety appliance for use upon elevators, and the contract of license required the licensee, in addition to making substantial payments of money, to make tests of the device, and, when found satisfactory, to "put the apparatus into practical use," "within such reasonable time as is convenient," and thereupon to pay certain royalties. The defendant made all the payments covenanted, but failed to install the apparatus within what was found to be a reasonable time, and thereby committed a breach of one of its covenants. The court held, notwithstanding, that, in failing to define the amount of "practical use" to which the defendant was required to put the device, the complainant put himself within the defendant's control, from which position he could not retreat without affirmatively showing that the defendant had "failed to exert itself in good faith to install the elevators." The court further held that, although the defendant was found to have made a breach of its covenant to install the apparatus

within a reasonable time, it nevertheless was not a breach of a covenant that went to the whole consideration, and therefore did not warrant rescission.

In the case under consideration, the foundry company has relieved Crowe of the necessity of proving what the court required of the complainant in Neenan v. Otis Elevator Co., by admitting every essential thing. The whole consideration moving from the foundry company to Crowe in the contract of license was the manufacture and sale of stokers, and thereafter the making of quarterly reports, of sales and quarterly payments of royalties. The defendant admitted breaches of all of these undertakings by admitting that after January 10, 1912, it neither made stokers, submitted reports, nor paid royalties—in short, that it had "stopped working under the license." In the face of these admissions, there was left nothing necessary to be proved, leaving for determination only the question whether the facts as proved supported the claim of a rescission.

Second. Against Crowe's claim of a rescission of the contract, the foundry company makes two contentions: First, that the contract is not rescinded but is in full force, and although under it stokers may or may not have been made and royalties may or may not be due, Crowe is without remedy in a court of equity to enforce the contract or recover for its breach, because of his adjudged misconduct; and, second, that "it is not informed as to whether the stokers it has manufactured and sold since January 10, 1912, are within the scope of the contract of January 29, 1908, or not, and therefore leaves the plaintiff to make such proofs thereof as he may." Preceding the making of these two defenses, the foundry company made the admissions adverted to.

[1] With reference to the first contention, we, of course, admit the full force of the maxim that "he who has done inequity cannot have equity," and recognize the principle that equity imperatively demands of suitors in its courts fair dealing and righteous conduct with reference to the matters concerning which they seek relief. Weegham v. Killefer (D. C.) 215 Fed. 168, 171. The question here is whether this is a case for the application of that principle.

While the misconduct of Crowe at various stages of the controversy is established by the chancery proceedings in the New Jersey courts, the record in this case discloses, with equal certainty, reprehensible conduct on the part of the foundry company. The whole controversy between the parties was not involved in the question submitted for adjudication in the case instituted in the District Court, from which this is an appeal. Many phases of it had been adjudicated elsewhere, which do not bear upon the question submitted in this action, in respect to which no relief was sought. What was before the District Court, and what is before this court on appeal, is a question whether certain acts of the parties, not determined by the adjudications before referred to, justify and constitute a rescission of the contract. While Crowe may have forfeited a right to appeal to a court of conscience for equity in matters growing out of his misconduct, his previous conduct does not foreclose against him all opportunities to have

his contractual relations with the foundry company ascertained and adjudged. As that is what he has asked in this case, we are of opinion that he is not improperly in court.

To the second contention of the foundry company that it is not informed whether, since January 10, 1912, it made stokers under the contract, and therefore leaves that for Crowe to prove and the court to decide, we are unable to yield, for we feel that by its testimony it has decided that question itself. In addition to the testimony for Crowe, the foundry company admitted breaches of its covenants. This being true, the only questions remaining are, first, what is the character of the covenants broken, and what is the legal effect of the breaches, and, if the contract was rescinded, what was the date of its rescission?

[2] These questions are controlled by the principle of law that a breach of a covenant, which goes to the whole consideration of a contract, gives to the injured party the right to rescind the contract or to recover damages for the breach; or, stated conversely, a breach of a covenant, which does not go to the whole consideration of a contract, but which is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract or warrant its rescission by the injured party. Kauffman v. Raeder, 108 Fed. 172, 47 C. C. A. 278, 54 L. R. A. 247; Howe v. Howe & Owen Ball Bearing Co., 154 Fed. 820, 83 C. C. A. 536; Neenan v. Otis Elevator Co. (C. C.) 180 Fed. 997, 1000.

While every breach of a contractual obligation confers a right of action upon the injured party, it is thus seen that every breach does not operate as a discharge. A breach which permits a rescission of the contract, discharging the other party, must be of an absolute part of the obligation—that is, a breach of that part of the obligation which goes to the whole consideration, and may be made, first, when the party renounces his liabilities under it; second, when by his own act he makes it impossible to perform; or, third, by failing fully to do what he promised. When this occurs, the party offended against may consider the contract rescinded and himself exonerated, or sue upon the contract for such damages as he has thereby sustained. Anson on Contracts, 276–285; 9 Cyc. 600, 635.

[3] The main purpose of the contract in dispute was to secure the manufacture and sale of stokers of a certain kind, which the foundry company undertook to do. When it failed in that undertaking, it committed a breach of a covenant that went to the very essence of the contract, and to the covenant to make and sell stokers; all other covenants were subordinate and incidental. Therefore it appears that some time prior to September 30, 1912, the defendant committed breaches of covenants of the contract that went to the whole consideration.

Being thus for the first time informed of the foundry company's breach of its main covenant, Crowe found himself possessed of the right to pursue one of several courses, first, to hold the contract rescinded and to consider himself exonerated from its obligations, or, second, to sue on the breach for damages. He elected the former, and on November 2, 1912, wrote the foundry company of his election, and

pronounced the contract rescinded, to which no reply was made. In this we think Crowe was within his rights, and the legal effect of the action of the two parties was a rescission of the contract, a termination of the contractual relations between them, and a restoration to Crowe of the rights under his patents theretofore licensed to the foundry company.

Of the same opinion was the District Court, and in the reasoning and conclusion of the learned judge we concur, but we think that instead of adjudging that the contract "be and the same is hereby rescinded and annulled as and of this 21st day of May, 1914" (the date of the decree), the District Court should have adjudged that the contract had been rescinded by the complainant availing himself of the defendant's breach when and at the time he communicated his election to the defendant. In other words, we are of opinion that the contract was rescinded by the acts of the parties and not by the decree of the District Court, and that it was rescinded on November 2, 1912, and not on May 21, 1914. The difference is material because of the difference in dates.

It may be gathered from the evidence that since November 2, 1912, the foundry company has manufactured stokers of the type contemplated by the rescinded contract of license. If this be true, the foundry company did not manufacture and sell them under the contract of license, for upon that date the contract was annulled, the license ceased to exist, and the patent rights thereunder were restored to Crowe. Whether stokers of the type embraced within the patents have since been manufactured by the foundry company is a proper matter of inquiry upon a suit for infringement of Crowe's patents. That question was indirectly brought into this case as a matter of defense, but it is a question that can be properly adjudicated only in an action instituted by one party against the other, not under the contract, nor on a motion to commit for contempt of the court's injunction, but in a suit for infringement of patents.

We think the District Court erred in granting an injunction against the foundry company, enjoining and restraining it and its servants from operating or attempting to operate under the contract of January 29, 1908. Upon our theory of the case, the contract was rescinded on November 2, 1912. Upon that date, the contractual relations between the parties ended, and upon each of them was placed the consequences of their subsequent acts. The remaining part of the decree, refusing an accounting and withholding the right of action for recovery of damages by either party against the other, dispenses with the necessity of an injunction and relieves the situation of consequent embarrassments.

It is therefore ordered that the decree of the District Court be modified to conform with this opinion, and, when so modified, that it be in all respects affirmed.