HINER et al. v. C. G. ALDRICH CO.

(District Court, D. Massachusetts. February 25, 1919.)

No. 735.

1. PATENTS ⊚⟲215—CONTRACTS—CONSTRUCTION.

A contract whereby plaintiffs, owners of a patent for reels for eyeglasses, contracted to sell their entire interest to defendant for $1,500, $300 to be paid in cash and the remainder to be paid as royalties, involved a license to defendant to manufacture the patented article.

2. PATENTS ⊚⟲215—CONTRACTS—CONSTRUCTION.

Where plaintiffs, owners of a patent for reels for eyeglasses, contracted to sell their entire interest to defendant for $1,500, $300 to be paid in cash and the remainder to be paid as royalties, and defendant proceeded to manufacture reels, claiming that they were not covered by the patent, and plaintiffs asserted that the reels manufactured were so covered, plaintiffs were not entitled to declare the contract rescinded and recover for the infringement, for, if the reels manufactured by defendant were covered by the patent, defendant's refusal to pay the royalties which in time would entitle it to the patent was such a breach as could be compensated by damages.

3. COURTS ⊚⟲290—JURISDICTION—FEDERAL COURTS.

Where defendant, sued for infringement of patent, at most was guilty of a breach of contract of sale of patent rights, and the amount plaintiffs were entitled to recover would not exceed $1,200, the federal court was without jurisdiction.

4. COURTS ⊚⟲351½—DISMISSAL OF SUIT—WANT OF JURISDICTION.

Where bill in equity does not show jurisdiction of federal court, and cannot be made good by amendment, bill must be dismissed.

5. COSTS ⊚⟲48—DISMISSAL OF BILL FOR TECHNICAL LACK OF JURISDICTION.

Costs need not be awarded, where the defendant's course has been found grossly unfair and inequitable, and the bill has been dismissed for technical lack of jurisdiction.

In Equity. Bill by Charles H. Hiner and others against the C. G. Aldrich Company. Bill dismissed.

Charles J. Williamson, of Washington, D. C., and Nathan Heard, of Boston, Mass., for plaintiffs.

Jesse A. Holton, for defendant.

ANDERSON, Circuit Judge. The bill in this case is a typical infringement bill, brought by owners of a patent, citizens of Virginia, against a Massachusetts corporation, the alleged infringer. The defenses set up in the amended answer are that the Hiner patent, construed in the light of the prior art, does not cover the construction used by the defendant. In the alternative, the defendant claims a license under a written instrument dated September 12, 1913, executed by plaintiffs and defendant. This instrument is alleged never to have been rescinded or annulled as the result of any judicial proceeding, nor terminated by mutual consent of the parties.

In this agreement the plaintiffs are parties of the first part, and the defendant corporation the party of the second part. It recites that:

"Whereas, parties of the first part are the owners" of the Hiner patent "covering a reel for eyeglasses"; and

"Whereas," the defendant company "is desirous of purchasing such patent and all interests thereunder":

---

⊚⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

255 F.—50

"Now, therefore, this indenture witnesseth:

"First: The parties of the first part hereby agree to sell to said party of the second part their entire interest in said patent on the following terms and conditions: The total purchase price shall be the sum of fifteen hundred dollars ($1,500), of which one hundred dollars shall be paid in cash October 1, 1913; one hundred dollars November 1, 1913; one hundred dollars February 1, 1914. For the balance of the purchase price the party of the second part shall pay to the parties of the first part a royalty of twenty-five cents per dozen of reels sold by said party of the second part, monthly payments to be made on account of said royalty on the 20th day of each and every month, beginning with the 20th day of November, 1913, and to cover accounts to the 1st day of said month. Succeeding settlements to be made monthly on the 20th day of each month until the royalties so realized shall equal the amount of twelve hundred dollars ($1,200), at which time full title to said patent and all improvements on the same shall pass to the parties of the second part.

"Second. The parties of the first part hereby agree to execute a proper assignment of said patent when said payments shall have been fully completed.

"In witness whereof, the said C. G. Aldrich Company has caused these presents to be signed, sealed, and delivered, and its corporate seal hereto affixed, and the said parties of the second part have hereto set their hands and seals, the day and year first above written."

The instrument is duly signed and acknowledged by all the parties thereto; it was recorded in the Patent Office on November 6, 1913.

The parties agree that the three $100 payments referred to in this instrument were duly made, leaving unpaid $1,200, referred to in the instrument as "the balance of the purchase price."

The defendant proceeded shortly after the execution of this instrument to manufacture and put upon the market in large numbers, many thousands in all, a reel for eyeglasses which the defendant claims is not within the scope of this patent.

Carl G. Aldrich appears to be the chief executive officer of the defendant corporation. Under date of August 10, 1914, he filed in the Patent Office an application for a patent on an improved eyeglass reel, which patent was granted on July 18, 1916. Apparently the reels manufactured by the defendant are claimed to be covered by the Aldrich patent. It does not appear that the plaintiffs, until at or about the time of the trial, had any knowledge that Aldrich had made this application, or that a patent had been granted to him.

The written contract, dated September 12, 1913, contemplated that the defendant should begin almost immediately the manufacture and sale of reels under the Hiner patent, for it provided for the first accounting of royalties on the 20th of November, 1913, to cover the preceding month of October. The plaintiff Lang, who seems to have had a store in Staunton, Va., where he sold diamonds, watches, optical goods, etc., in a letter written in October, 1913, expressed to the defendant the hope that it would hurry along the dies, as he (Lang) was anxious to get some of the reels manufactured by the defendant, thinking the prospects good for their sale. The dealings between the parties thereafter are indicated by correspondence as follows:

On October 31, 1914, the plaintiff Lang wrote the defendant:

"I have been waiting for some time to see the reels on the market; also to hear from you in regard to same. You will recall that the royalty should have commenced some time back, but I took it for granted that you did not have it ready for the market. I understand that the same is being placed, and I will be glad to hear from you."

To this the defendant replied on November 6, 1914:

"In reply to your favor of the 31st Oct., will say that we have not as yet sold any reels made under your patent No. 1,036,844. When we do, we will, of course, give an accounting and settlement according to agreement."

At that time defendant was manufacturing and selling reels, and Aldrich had already applied for his patent.

On March 13, 1915, Lang wrote again to the defendant:

"You will please render me a statement of all reels sold, according to contract. I want to congratulate you on the beautiful reel which you have put on the market. I am selling them, and think they are going to have a big sale, from all indications."

The defendant replied to Lang on March 22, 1915:

"In reply to your letter of the 14th, will say that in our experiments to date we have not produced a satisfactory working model of a reel embodying the particular construction of the Hiner patent, therefore have sold none under that contract. The reels which we are marketing are of entirely different construction, as you will observe by a comparison."

On January 12, 1916, the plaintiff sent a registered letter to the defendant, which is as follows:

"We hereby notify you that your course in regard to the contract, dated September 12, 1913, between you and us, respecting United States letters patent No. 1,036,844, issued August 27, 1912, to Chas. N. Hiner, for a reel for eyeglass, and particularly what is set forth in your letter dated March 22, 1915, to Mr. Henry L. Lang, wherein you say that you have not made the 'particular construction of the Hiner patent,' and 'therefore have sold none under the contract,' has constituted such a repudiation and breach by you of said contract as to terminate the same, and to discharge and release us from any obligations which performance on your part would have created, and to render you liable for all other consequences that have ensued from your said repudiation and breach. We further notify you that the eyeglass reel which you have made and sold, and which in your said letter of March 22, 1915, you say is an 'entirely different construction' from the 'particular construction of the Hiner patent' forming the subject of said contract, is an infringement of said patent, and we have instructed our attorney to institute suit against you for an injunction, and an accounting of profits for your said infringement."

By this letter the plaintiff sets up:

(a) That the defendant's course of conduct, and particularly its claim that it has not made "the particular construction of the Hiner patent," and therefore sold none under that contract, is such a repudiation and breach of the contract as to terminate the obligations under it; and

(b) The inconsistent claim that the eyeglasses which the defendant has made and sold are covered by the Hiner patent and are therefore an infringement of it.

The bill was sworn to on February 8, 1916, although actually filed in court on June 19, 1916.

[1] Clearly, both parties are correct in their construction of this contract as involving a license to the defendant to manufacture reels covered by the plaintiffs' patent. Whether it is, or was at any time, an exclusive license, need not now be considered. It is not entirely clear that the plaintiffs' claim that the defendant, under the terms of the contract, was bound to manufacture and sell reels covered by the patent, is sound. There is no express covenant in the contract requiring the defendant to make any use whatsoever of the plaintiffs'

patent. Whether such covenant arises as a matter of necessary implication need not now be determined. Nor is it necessary to decide whether the defendant, having manufactured and sold by the thousand reels meeting the same commercial demand that reels manufactured under the plaintiffs' patent were intended to meet, is estopped to deny its accountability for royalties on such reels, even if they were not technically covered by the Hiner patent.

[2] Passing, then, all these questions, which might arise between the parties on different pleadings, we have this situation: The plaintiffs by their infringement suit allege that the defendant has actually manufactured reels covered by the plaintiffs' patent. If this is so, defendant's sole breach of the contract lies in its failure to account and pay royalties at 25 cents per dozen up to the amount of $1,200. The defendant pleads the contract as still outstanding, thereby admitting itself bound to full performance of its terms. The plaintiffs do not offer to return the $300 already paid. They do not ask the court to adjudicate that the defendant has been guilty of such breach of contract as to entitle the plaintiffs to a rescission. They ground their infringement suit upon the proposition that the contract was ended by their notice on January 12, 1916. This amounts to a claim that for all reels sold by the defendant prior to January 12, 1916, the plaintiffs are entitled to an accounting under the terms of the contract at the rate of 25 cents per dozen; that for all reels sold subsequent to January 12, 1916, the plaintiffs are entitled to an accounting by the defendant as an infringer of the plaintiffs' patent. The number of reels sold by the defendant prior to January 12, 1916, was not shown with any approximate accuracy at the trial. That the number was substantial did appear. As the case now stands, it cannot be said that, on an accounting under the contract, the full amount of $1,200, the balance of the purchase price, would not appear to be due from the defendant to the plaintiffs, payment of which would entitle the defendant to full title to the patent. To hold that the contract has been rescinded under these circumstances is manifestly impossible.

The plaintiffs cite as their main reliance Oscar Barnett Foundry Co. v. Crowe, 219 Fed. 450, 455, 135 C. C. A. 162. This case does not sustain the plaintiffs' proposition. In that case, the contract between Crowe, the patentee, and the foundry company expressly required the foundry company to manufacture the patented article and to render accounts and pay royalties on the sales thereof. The court said (219 Fed. 454, 135 C. C. A. 166):

"The whole consideration moving from the foundry company to Crowe in the contract of license was the manufacture and sale of stokers, and thereafter the making of quarterly reports of sales and quarterly payments of royalties. The defendant admitted breaches of all these undertakings by admitting that after January 10, 1912, it neither made stokers, submitted reports, nor paid royalties—in short, that it had 'stopped working under the license.' In the face of these admissions, there was left nothing necessary to be proved, leaving for determination only the question whether the facts as proved supported the claim of a rescission."

It was held that the decision of this question was—

"controlled by the principle of law that a breach of a covenant, which goes to the whole consideration of a contract, gives to the injured party the right

to rescind the contract or to recover damages for the breach; or, stated conversely, a breach of a covenant, which does not go to the whole consideration of a contract, but which is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract or warrant its rescission by the injured party" (citing Kauffman v. Raeder, 108 Fed. 172, 47 C. C. A. 278, 54 L. R. A. 247; Howe v. Howe & Owen Ball Bearing Co., 154 Fed. 820, 83 C. C. A. 536; Neenan v. Otis Elevator Co. [C. C.] 180 Fed. 997, 1000).

In the Crowe Case the patentee's entire consideration for the license contract grew out of the foundry company's agreement to manufacture and sell the patented article, so that Crowe might have accruing royalties. When the foundry company "stopped working under the license," they destroyed, from that time on, all of Crowe's rights under the contract. But in the case at bar the evidence shows that the defendant has manufactured and sold thousands of reels which the plaintiffs say are covered by the Hiner patent. If this is so, then the plaintiffs are entitled under the contract to an accounting from the defendant for all reels sold at the rate of 25 cents per dozen reels until the aggregate of $1,200 is reached. This sum being paid (plus some interest), then all their rights in the patent cease, and it becomes entirely the property of the defendant.

On this state of facts it cannot be held that the defendant's conduct, however unfair and inequitable it may appear to be, goes to the essence of the plaintiffs' contractual rights.

On the plaintiffs' own claim, if the defendant was guilty of a breach, that breach may readily be compensated for in money damages. See 13 Corpus Juris, p. 615, and cases cited. Snow v. Alley, 144 Mass. 546, 11 N. E. 764, 59 Am. Rep. 119, and cases cited; Foster Hose Supporting Co. v. Taylor (C. C.) 180 Fed. 995; Hartell v. Tilghman, 99 U. S. 547, 25 L. Ed. 357; Standard Dental Mfg. Co. v. Nat. Tooth Co. (C. C.) 95 Fed. 291.

The result is that, if the plaintiffs' allegation that the defendant's reels fall within the scope of the Hiner patent is well grounded, their rights are to be found within the terms of the outstanding contract. That contract cannot be held annulled or rescinded. If the plaintiffs' allegations of infringement are not, in point of fact, true, obviously the present bill cannot be maintained.

It is therefore unnecessary to attempt to reach a conclusion as to whether the reels manufactured by the defendant did or did not fall within the scope of the Hiner patent. The bill must be dismissed.

[3-5] If it were practicable for the plaintiffs to amend their bill, so that such rights as they may have under the contract could be tried in this court, leave for such amendment should be granted; but it is clear that the plaintiffs cannot allege and prove that under this contract they are entitled to a sum in excess of $3,000. The defendant must therefore in this court prevail. But there is nothing in the course pursued by the defendant which calls for the exercise in its favor of judicial discretion. The contract possibly is inadequate and ambiguous. But as a matter of fair business dealing, and perhaps as a matter of legal construction, it required the defendant to manufacture and sell, or at any rate to attempt to manufacture and sell, reels made under the Hiner patent, accounting for royalties at the stipulated rate to

the amount of $1,200 as the balance of the purchase price. Instead of pursuing this straightforward, businesslike course, the defendant has construed this contract as a license, without time limit, plus an option of purchase. It denies that there is any obligation upon it to purchase. Aldrich took the plaintiffs' patent and studied—whether successfully or not no opinion is expressed—how to avoid using it, technically, while getting the benefit of a device commercially intended for exactly the same purposes. The defendant attempts under this contract to continue to hold the patent, more than a third of whose life has already run, so as to destroy its value to the plaintiffs, and prevent its being used in competition with the Aldrich patent, while at the same time seeking to escape from the payment of four-fifths of the contemplated purchase price. Under these circumstances, it is to be regretted that this court has not power to do real justice as between the parties.

Let a decree be entered, dismissing the bill, without costs to the defendant.