Lucy J. Wadman & another *vs.* Henry S. Boudreau & others.

Bristol.    October 29, 1929. — January 28, 1930.

Present: Rugg, C.J., Pierce, Wait, Sanderson, & Field, JJ.

*Contract,* Construction, Performance and breach.    *Equity Jurisdiction,* Forfeiture.    *Words,* "Removed from the premises."

The owner of land, bounded on the north for four hundred feet on a highway, gave a lease of his land for two years to a contractor, the lease providing that the contractor might excavate sand, loam and gravel from an area beginning at a point two hundred feet south of the highway and two hundred feet from the eastern boundary, "The price of all sand, loam, and gravel removed from the premises to be paid for at the rate of ten cents . . . per cubic yard, payments to be made monthly, immediately following the removing of the first ten thousand . . . cubic yards." It also was provided that no excavating was to be done within two hundred feet from the eastern boundary line "and such plot of land shall be for a crusher plant and storage. This plot of land to be used as a crusher plant, and at expiration of contract to be placed in as good a condition as when contract is signed and to be without holes or rubbish thereon." It also was provided: "This agreement is binding upon both parties, but contract can be revoked and declared NULL and VOID upon the break of any provision

contained therein." The contractor paid $1,000 at the making of the agreement. The crusher, without objection by the land owner, was placed in a different location from that described in the lease. After the contractor, by a method of "side casting" in excavating the loam, had caused it to mix with sand and gravel in the excavation, which thus was lessened in value, had removed from the land over nine thousand three hundred cubic yards of material; had excavated and piled on the land over sixteen hundred sixty-six cubic yards more, and also had excavated a further sixteen hundred cubic yards which he had carried by trucks from the place of excavation off the lot to the road, west along the road and a swamp road, and back upon the lot to a place of storage thereon, but had not paid more than the initial payment, the land owner before the expiration date of the lease sought by suit in equity to have the contract declared void, and appealed from a final decree dismissing his bill without prejudice to any right of action which he might have for improper sidecasting of loam. *Held,* that

(1) Not more than nine thousand three hundred cubic yards of material had been "removed from the premises," and no further payment yet was due from the contractor;

(2) There was no violation of the agreement with regard to the location of the crusher; the language of the agreement with regard thereto should be interpreted not as a limitation on the power of the contractor to place the crusher elsewhere, but as a permission to use the area expressly excluded from excavation as a location for a crusher and for storage;

(3) Whether, at the end of the term of the lease, it would appear that the contractor had not left the premises as the provisions of his agreement required, and what, if any, damages should be paid by him for that reason, could not be determined until the end of the term;

(4) The dismissal of the bill without prejudice preserved to the plaintiff such rights as he had with respect to any breach of the agreement through improper sidecasting, a master having found that such breach, if any, had not gone to the essence of the agreement; and, having resorted to equity, the plaintiff must abide by that decision, since the court had power in the circumstances to relieve against forfeiture.

BILL IN EQUITY, filed in the Superior Court on February 13, 1929, seeking to have the agreement permitting the defendants to excavate and remove sand from the plaintiffs' premises declared void, to have the defendants removed from the premises, and for damages.

The suit was referred to a master. Material facts found by the master are stated in the opinion.

The suit was heard upon the master's report by *F. T. Hammond,* J., who made findings and rulings, in accordance

with which, by further order of *Collins*, J., a final decree was entered dismissing the bill. The plaintiff appealed.

*G. B. Goodman*, for the plaintiffs, submitted a brief.

No argument nor brief for the defendants.

WAIT, J.   By a written agreement, the plaintiffs as parties of the first part agreed to lease for the term of two years a parcel of land on "the south side of the Old Westport Road" from which sand, loam and gravel were to be excavated, "The price of all sand, loam, and gravel removed from the premises to be paid for at the rate of ten cents ($.10) per cubic yard, payments to be made monthly, immediately following the removing of the first ten thousand (10,000) cubic yards"; compensation "to be estimated until the expiration of the contract," when a survey was to be made, at the expense of the parties of the second part, and any differences to be adjusted in accord with the surveyor's measurement. There was no detailed boundary or description of the land; but the agreement set out that "Beginning at the westerly boundary of the Smith farm proceeding west along the road line for a distance of two hundred (200) feet, there shall be no excavating done, and such plot of land shall be for a crusher plant and storage. This plot of land to be used as a crusher plant, and at expiration of contract to be placed in as good a condition as when contract is signed and to be without holes or rubbish thereon." The plaintiffs agreed that beginning at a line two hundred feet south of the road line, the parties of the second part "may start excavating to procure sand, loam, and gravel"; and the latter agreed that there should be no excavating work done on the property north of that line. Wood standing or cut on the land was to be the property of the plaintiffs, who were to keep it cut so as not to inconvenience the parties of the second part as they advanced. There were provisions that a ramp should be "placed on the land of the party of the first part, leading from the road on the north side and extending as far south as excavating work is done if necessary"; that "This agreement is binding upon both parties, but contract can be revoked and declared NULL and VOID upon the break

of any provision contained therein"; and for a renewal for three years "at expiration of contract" on stated terms.

The bill was filed February 13, 1929. The master found that work began shortly after November 9, 1927, the date of the agreement. The plaintiffs' land fronted for four hundred feet on the road. The defendants used the entire frontage for storage, without objection from the plaintiffs. The crusher was not placed on the portion bounded for two hundred feet on the road, by the Smith farm, and by the line two hundred feet south of the road, but at a point near the middle line of the lot and two hundred feet south of the line two hundred feet south of the road. Excavation proceeded northerly to the line two hundred feet from the road, and westerly to a swamp road on the west. The loam was "sidecast," but in two places was stored so near to the sides of the cut that portions slid down and by mixing with the sand and gravel in the excavation have lessened its value ten per cent. To remove this material improperly sidecast would cost seven cents a cubic yard. Elsewhere the sidecasting was properly done. The only ramp constructed extends from near the crusher to an old road leading southerly over the portion referred to in the agreement as the location for the crusher plant which was repaired by the defendants. They have sold and removed from the plot seven thousand, seven hundred and fifty-eight and eight one-hundredths cubic yards; have taken away one thousand, five hundred and fifty-five cubic yards and stored them on a lot on the north side of the Old Westport Road; have excavated about sixteen hundred cubic yards of sand and stored it on the western lot between the road and the line two hundred feet south of the road; have excavated about two thousand cubic feet of loam and piled it on the sides of the pits; and have excavated about one thousand cubic yards of gravel and piled it on the easterly portion referred to in the agreement as the location of the crusher plant. The sixteen hundred cubic yards of sand were carried by trucks from the place of excavation, off the lot to the road, westerly along the road and the swamp road, back upon the lot

to the place of storage. They paid $1,000 at the time of making the agreement, which was treated as payment for the first ten thousand cubic yards; but have paid no more.

The master found further that sidecasting was a proper method of excavating; that two methods of payment are usual in sand and gravel leases, one, to pay for yardage excavated from the banks on a computation made from monthly surveys, and the other, to pay on the basis of bin sales from stock piles; and that the words "from the premises" were not in the agreement when first drawn, but were inserted after "sand, loam, and gravel removed" after discussion between the parties. There were no objections to the report. After hearing, the judge ordered a decree dismissing the bill with costs, but without prejudice to any right of action which the plaintiffs may have for improper sidecasting of loam. This appeal followed.

The plaintiffs contend that the agreement was broken by failure to make payments due, by placing the crusher elsewhere than as required, and by improper methods of excavating; and that consequently they were entitled to declare the contract null and void. They cannot prevail. Under the contract, payment has been made for ten thousand cubic yards and nothing further was due until an amount in excess of ten thousand cubic yards had been "removed from the premises." The word "premises" has varied meanings depending upon the context and the circumstances. Many are illustrated in *Old South Association* v. *Codman*, 211 Mass. 211, 216. See also *Casey* v. *Boston Elevated Railway*, 255 Mass. 33; *Urban* v. *Simes*, 259 Mass. 336, 339. Here it refers to the entire lot of land owned by the plaintiffs in which those who were to excavate were given rights. In view of the findings of the master, it would be unreasonable to take it to refer to the several locations from which materials were to be excavated. No addition to the word "removed" was called for if the parties intended to make payment due when material was excavated rather than when it was carried away from the area used by the defendants in the work they were to undertake. The one thousand, five hundred and fifty-five cubic yards carried

across to another owner's lot on the north side of the road and there deposited were removed from the premises. The sixteen hundred cubic yards of sand transported in bulk along the roads on its way to deposit upon a portion of the area designed for storage were not so removed. A transitory unbroken change of location from one point to another of the area cannot be regarded as removal "from the premises."

The language of the agreement with regard to the crusher should be interpreted not as a limitation on the power of the parties of the second part to place the crusher elsewhere, but as a permission to use the area expressly excluded from excavation as a location for a crusher and for storage. The conduct of the parties sustains this interpretation. No objection was made when, among the first things done under the agreement, the crusher was put in the place it occupied.

Undoubtedly the parties of the second part would be liable for improper use of the premises resulting in damage to the owner. *Chalmers* v. *Smith*, 152 Mass. 561. *Means* v. *Cotton*, 225 Mass. 313, 317. Whether, however, damage has resulted or will result from the improper sidecasting remains to be determined. At the expiration of the contract term the premises must be left in good condition; and it well may be that no damage to the owners will exist.

If there has been a breach of the agreement through improper sidecasting, it was within the power of a court of equity to relieve against forfeiture, where the breach has not gone to the essence of the agreement. *Lundin* v. *Schoeffel*, 167 Mass. 465. It is true that at law any breach would give the right to end the contract under the terms of this agreement. See *R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41, 47. The plaintiffs, however, resorted to equity, and they must abide the result. The court has preserved to them such remedy as they may have in damages.

*Decree affirmed with costs.*