## KRELL v. BOVAIRD SUPPLY CO.
### No. 1323.

Circuit Court of Appeals, Tenth Circuit.

April 20, 1936.

C. H. Rosenstein, of Tulsa, Okl. (T. L. Blakemore, of Sapulpa, Okl., on the brief), for appellant.

W. N. Banks, of Independence, Kan., for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

This is an appeal from a decree dismissing the bill in an action to cancel a written contract and for an accounting. The parties entered into the contract in February, 1926. It recited that plaintiff was an inventor of certain new and useful improvements in casing elevators, casing spiders, tubing elevators, tubing spiders, clamping devices, and pipe clamps; that patents had been issued in the United States and in certain foreign countries for some of them and that applications were pending in the United States and in cer-

tain foreign countries for the others, the patents being described by number, date, and device covered. It further recited that defendant desired to acquire the exclusive right to manufacture and sell such devices and any improvements thereon which plaintiff should thereafter make or acquire during the existence of the patents. Following such preliminary recitations, plaintiff conveyed to defendant an exclusive license to manufacture and sell the articles disclosed in the patents "and improvements thereon connected therewith or pertaining thereto, hereinafter made or acquired by the Licensor, to the full end of the term for which said Letters Patent, are or may be granted." Defendant was obligated to begin immediately the manufacture and sale of the articles coming under the terms of the agreement and to keep them continuously on the market; and to pay plaintiff a royalty of 15 per cent. of the net sale price without reference to whether collections had been made upon such sales. It was further provided that the salary of M. B. Davis from July 1, 1925, to February 28, 1926, at the rate of $275 per month, and the salary of any other draftsman thereafter employed by plaintiff at a rate not to exceed $300 per month, for the purpose of performing the agreement, should be paid by defendant, charged to the royalty account and deducted from payments made to plaintiff; and it was still further provided in that paragraph that all patents accruing to plaintiff on account of the agreement between himself and Davis or of such other draftsman, should come under the terms of the contract. A copy of the agreement between plaintiff and Davis was attached to the contract. It contained this language: "It is hereby acknowledged that Marvin B. Davis is to make absolute assignments of inventions and applications for Letters Patent for Casing and Tubing Elevators and Spiders, Rotary Turn Table Spiders and Draw Works while in the employ of Bovaird Supply Company and George Krell and that all assignments are to be made by George Krell under contract with Bovaird Supply Co." The contract in suit also specified that if either party should fail to carry out the terms thereof and should fail to correct the default within sixty days after notice, the other would be authorized to cancel it by notice in writing. Defendant has performed all of its obligations in respect to the manufacture and sale of casing elevators, casing spiders, tubing elevators, tubing spiders, clamping devices and pipe clamps. In doing so it has expended about $50,000, and in addition it carries a stock valued at about $50,000. On account of these outlays, it has not made substantial profit on the venture.

On April 30, 1926, applications were submitted in the name of Davis for patents on draw works and rotary turn tables. Davis made assignments to plaintiff and patents issued in the name of the assignee on September 13, 1927, and November 27, 1928, respectively. Plaintiff made two demands in writing that defendant manufacture and place on the market draw works and rotary turn tables embraced within such patents. The first demand was made on October 6, 1928, and the other on August 28, 1931. Defendant refused to comply therewith and on November 2, 1931, plaintiff advised it in writing that he elected to cancel the contract. Contending that it had fully discharged its obligations and denying the right of cancellation, defendant continued to manufacture and sell the devices specifically described in the contract. This suit followed to enforce cancellation and for an accounting since November 3, 1931.

The trial court held that the contract did not require defendant to manufacture and sell draw works and rotary turn tables; and, further, if it did, the covenant requiring it to do so was a subordinate and incidental one, breach of which did not justify cancellation.

■ The decree is attacked on the ground that the contract plainly imposed upon defendant the duty to manufacture and sell draw works and rotary turn tables; that it admittedly failed to manufacture and sell them, and that such breach entitled plaintiff to exercise the right of rescission. Plaintiff was an inventor of casing elevators, casing spiders, tubing elevators, tubing spiders, clamping devices, and pipe clamps, all for use in the production of oil and gas. He had obtained patents on some of them and he had applications pending which covered the others. Defendant desired to obtain the exclusive right to manufacture and sell such devices. The parties contemplated that improvements in them would probably be perfected later. With that background, the devices were described in the contract with meticulous care; the number and date of each patent and the device which it covered was set

forth; and the desire of defendant to obtain a license to manufacture and sell them with subsequent improvements was recited. Then followed the provision in which plaintiff granted such license to defendant.

Rotary turn tables and draw works are for use in rotary drilling. The turn table is an instrument which rotates the pipe and draw works is the tool which drives the turn table. They are separate and distinct from casing elevators, casing spiders, tubing elevators, tubing spiders, clamping devices, and pipe clamps. In other words, they are wholly unrelated to the devices which were specifically set forth in the writing with careful detail. We think the subject-matter and scope of the license was the several devices which plaintiff had invented and improvements in them which he should thereafter perfect or acquire during the existence of the patents. There is nothing in the contract which leads to the conclusion that the parties' contemplated or understood that it should include inventions which were distinct and without relation to those described. On the contrary, the language evinces a clear purpose to limit the license and to confine the duty of manufacture and sale to such devices and improvements in them. That is the clear import of the agreement when measured by its language and the circumstances attending its execution. And it must be held that the parties construed it in that manner. Plaintiff made no demand that draw works and rotary turn tables be manufactured and sold until October, 1928. Defendant failed to comply with that demand, and plaintiff remained silent for almost three years. It was at the end of that long period and two days after he left the employ of defendant that he made the second demand. Moreover, during that time he was engaged in an effort to induce other companies to manufacture and sell them. It was the position of defendant throughout that the contract did not include those devices. Defendant contended that plaintiff could not use the gripping devices described in the contract in the manufacture of draw works and rotary turn tables without payment of a royalty; but it never asserted the right to manufacture and sell either device. The language of the contract and the interpretation which the parties placed upon it negate the contention that defendant was required to manufacture and sell such de-

vices. It follows that the attempted cancellation was without justification.

■ But let it be assumed for the moment that draw works and rotary turn tables subsequently invented came within the contract, and, therefore, defendant was obligated to manufacture and place them on the market; still plaintiff cannot recover. The duty thus enjoined upon defendant must have its genesis in the somewhat parenthetical provision that Davis should assign to plaintiff all inventions which he made while in the employ of plaintiff and defendant and that such inventions should come under the terms of the contract. When given a rational and common-sense construction, it is manifest from both substance and arrangement of context that at most the covenant was an independent, subordinate, and incidental one which did not go to the whole or major consideration for the contract. It is settled law that breach of an independent provision in a contract which is incidental to its main purpose does not justify cancellation. The injured party is still bound and must perform his part. Recovery of damages is the remedy for a wrong of that kind, not rescission. Union Pac. R. Co. v. Travelers' Ins. Co. (C.C.A.) 83 F. 676; Kauffman v. Raeder (C.C.A.) 108 F. 171, 54 L.R.A. 247; Howe v. Howe & Owen Ball Bearing Co. (C.C.A.) 154 F. 820; Barnett Foundry Co. v. Crowe (C.C.A.) 219 F. 450; Dold Packing Co. v. Doermann (C.C.A.) 293 F. 315; Watchorn v. Roxana Petroleum Corporation (C.C.A.) 5 F.(2d) 636; 1 Black, Rescission and Cancellation § 212.

■ It is argued, however, that the contract expressly conferred the right to cancel upon default and that for such reason the general doctrine forbidding rescission for the breach of an incidental provision is without application. The contract does not provide that it may be canceled for any and every breach. Neither does it provide that it may be rescinded for a breach of any covenant contained therein, whether it be dependent or independent. Instead, it provides in general language that if either party fails to carry out its terms, the other may cancel. That has reference to breach of a dependent provision which goes to the main purpose of the contract. It does not refer to default in an independent and collateral provision which fails to reach such purpose. A court of equity is warranted in denying

cancellation for breach of a provision of that kind. Compare Wadman v. Boudreau, 270 Mass. 198, 170 N.E. 44.

We think the decree was right. Accordingly, it is affirmed.